## McWhorter & Baldwin *vs.* McMahan.

Where a deed is delivered, in performance of a contract for the sale of land, if the purchaser has any objection to the deed itself, or to the description of the premises therein, or if he objects to accepting the deed upon the ground that the premises are incumbered, it is his duty to make the objection known at the time ; so as to give the vendor an opportunity to obviate it.

A contract for the sale of lands is void, unless the contract, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party by whom the sale is to be made, or by his agent lawfully authorized. And where the contract has not been signed either by the vendor or by his agent, it is not binding upon the vendee, although he has subscribed the same.

To constitute a valid signing of an executory contract, for the sale of lands, by an agent of the vendor, it is only necessary that such agent be lawfully authorized to execute the contract ; an authority in writing for that purpose is not required by the statute of frauds.

Aliter as to conveyances and leases, by which an interest in lands *in præsenti* is intended to be conveyed. In such cases the authority of the agent of the vendor who subscribes the conveyance or lease must be in writing.

November 21.   This was an appeal by the defendant from a decree of the vice chancellor of the eighth circuit. The bill was filed for the specific performance of a contract for the sale of a store and lot in the village of Westfield, in the county of Chautauque, belonging to the complainants. The agreement was made on the 2d of February, 1839, between the complainants, who were copartners in trade under the name or firm of McWhorter & Baldwin, and the defendant McMahan, who were all present in the store, mentioned in the written contract, when such contract was made. Only

one of the complainants, however, signed the written agreement, by subscribing the partnership name thereto, in the presence and with the concurrence of his copartner. The contract was as follows : "In consideration of two thousand seven hundred and fifty dollars, to be paid to us as hereinafter mentioned, we hereby agree to sell to James McMahan the brick store which we now occupy, together with the lot in rear, or *lane*, subject to such restrictions as are mentioned in a certain writing passed between Joshua R. Babcock, John McWhorter, Norman Kibbee, Aaron Rumsey, and others, in reference to keeping open a lane as therein mentioned ; the said store being fifty-six feet front and rear, and extending to the centre of the walls on each of the sides respectively ; and to be paid for as follows, viz : One-third of the whole amount on the first day of May next, and the other two-thirds in three equal annual payments, with annual interest, and payable on the 1st day of May, 1840, 1841, 1842 ; a deed to be executed by the selling party within four days, and the said McMahan to give his bond and mortgage for the residue as above mentioned ; the selling party to give possession immediately, or to pay rent at the rate of $225 per annum until the first of May next.

February 2d, 1839.          McWhorter & Baldwin.
                           James McMahan."

On the 6th of February the complainants, with their wives, made and acknowledged a deed, and sent it to the defendant, together with a bond and mortgage to be executed by him, pursuant to the terms of the contract ; but he being then unwell requested the papers to be left with him by the commissioner. On the 7th of the same month they also sent to him a written notice that they elected to hold the premises as his tenants until the first of May, pursuant to the right reserved to them in the agreement, and at the rent mentioned therein. Four days afterwards the defendant called upon Judge Campbell, by whom the deed and bond and mortgage had been left with him, and signed

the bond, and signed and acknowledged the mortgage before him. And the judge endorsed a certificate of such acknowledgment thereon, and left the papers with the defendant, who then avowed himself ready to execute the contract. But he neither delivered the bond and mortgage to the complainants, nor paid the third of the purchase money to them, which was payable on the first of May, 1839, according to the terms of the agreement. On the contrary, he sent back the deed to the complainants, in the latter part of February ; but without making any objection to the form of the deed, or to the description of the premises therein. The complainants relinquished the possession of the premises on the 1st of May, 1839, and sent the key of the store to the house of the defendant, who was absent from home, together with the money to pay the rent up to that time ; but the person who was in charge of the defendant's business, in his absence, refused to receive the same.

On the fifth of September thereafter the complainants filed their bill in this case, for a specific performance, waiving therein a sworn answer from the defendant. The bill stated the substance of the agreement between the parties ; but in attempting to set out the written memorandum of the agreement, at length, the complainants made a slight mistake, by inserting the words "together with the lot in rear *of the same*" instead of " together with the lot in rear, *or lane*." The answer not being on oath, put in issue nearly all the material allegations in the bill ; and insisted that the written memorandum was not intended as an agreement, on the part of the defendant, to purchase the premises, but merely as a proposition on the part of the complainants, containing the terms upon which they were willing to sell. The evidence showed, however, that the defendant had frequently, after the signing of the memorandum, spoken of it as an agreement on his part to purchase. No objection to the title of the complainants was stated in the answer. But upon taking the testimony, it was ascertained that at the time of the contract there was an outstanding mortgage upon these premises, and upon other real

estate belonging to the complainants, which was still due; the other property, however, upon which it was a lien, was worth more than the amount of such mortgage.

The vice chancellor decided that the contract must be specifically performed if the complainants could make a good title. But as there was a mortgage on the lot, and there being no admission in the answer that the premises in the deed were the same as those described in the written memorandum, he directed a reference to a master to report upon the complainants' title to the premises, and whether the same were, at the date of such report, free from incumbrances; and that the master also inquire and report whether the premises described in the deed of the 6th of February, 1839, were the same as those contracted to be sold as described in the written memorandum. And all further directions were reserved until the coming in of the master's report. From this decretal order the defendant appealed.

*A. Tuber*, for the appellant. The memorandum of agreement, for the performance of which this bill was filed, is void by the statute of frauds; an agreement to be valid must be binding upon all the parties to the same. This contract was signed by Baldwin alone, in the name of the firm of Baldwin & Whorter, who were partners in the mercantile business and joint owners of the land. Baldwin could not bind McWhorter in the partnership name. (2 *R. S.* 69. *Loyd* v. *Titus*, 2 *John.* 430.) The memorandum contains no promise on the part of the defendant. If the memorandum was binding, the equity of the bill is not sustained by the evidence. It does not appear from the evidence that the defendant ever refused to fulfil the contract. There is no evidence that the complainants ever demanded the papers after the defendant executed them. The contract set out in the bill is different from the contract proved. (5 *Wend.* 538.) The complainants never gave or offered possession of the store to the defendant; and they never notified him where he could get the key;

and they never tendered to him the money they were to pay for rent. The refusal or neglect of the complainants to meet at the office of Dixon & Smith to examine the papers as they had agreed, and their neglect afterwards to notify the defendant of their intentions for nearly three months, is a virtual relinquishment of the contract by them, and exonerated the defendant. The premises were encumbered by a mortgage to the amount of $2000 and interest, at the time of the filing of the bill, and of the examination before the master. If the case is referred back to a master to take further proofs, the defendant should be permitted to introduce any defence and any proofs he may think proper. If the case is opened for further proofs to enable the complainants to patch up their case, they should be compelled to pay the defendant's costs, as a condition.

*C. H. S. Williams*, for the respondents. There was a sufficient execution of the contract on the part of the complainants within the statute of frauds ; both the complainants being present, and of course consenting to the method of execution. Baldwin wrote the names " McWhorter & Baldwin" to the contract, while McWhorter was present and consented to it. Baldwin was then his authorized agent to subscribe his name to the contract, and it was his (McWhorter's) act. (14 *Johns. R.* 484, *and the cases there cited.* 2 *Cowen & Hill's Notes to Phil. Ev.* 1268, 1280, 1. 3 *Kent's Com.* 47, 48, *and notes on same page.* Cady v. Shepard, 11 *Pick.* 400. 1 *Chit. R.* 787. *Skinner* v. *Dayton*, 19 *Johns. R.* 513. *Gram* v. *Seton*, 1 *Hall*, 262. *Mackay* v. *Bloodgood*, 9 *Johns. R.* 285. 1 *Wen.* 326. 9 *Id.* 439. 12 *Johns. R.* 102.) The subsequent execution of the deed by McWhorter was such a ratification by him of the act of Baldwin, in placing his name to the original contract, as would estop him from denying Baldwin's authority. And if McWhorter cannot deny Baldwin's authority, the defendant certainly cannot. At the time the deed was executed, and long afterwards, the defendant treated the contract as a valid and subsisting one.

(2 *Cowen & Hill's Notes to Phil. Ev.* 1268.) The complainants having complied with the terms of the contract on their part, they are entitled to a specific performance on the part of the defendant. (*Brown* v. *Haff*, 5 *Paige*, 235, 240. *Phyfe* v. *Wardell, Idem*, 283, 286, 268. 3 *Cowen*, 467, 491, 505. *Winne* v. *Reynolds*, 6 *Paige*, 411. *Newl. on Cont.* 89.) The defendant cannot say he has never refused to perform the contract on his part. He should have averred his readiness to perform. The outstanding mortgage is no objection to a decree for specific performance. The other property covered by the mortgage is sufficient to satisfy it. And it is sufficient if we remove this incumbrance at the time of the reference to the master to report as to the title. The premises described in the deed are the same as those mentioned in the contract. But no objection was made when it should have been done, if there was any substantial difference. (6 *Paige*, 407. 7 *Id.* 24. 3 *Wend.* 249.) The defendant's refusal to perform was not put upon this ground.

THE CHANCELLOR. The allegation in the defendant's answer that he was always ready and willing to perform the contract on his part, is fully rebutted by the proofs in the case. The complainants having executed and sent to him a deed, on the day mentioned in the contract, together with the bond and mortgage to be executed by him, it was his duty to perform his part of the agreement by returning the bond and mortgage to them, duly executed; as a sufficient demand was made when they were sent to him to be acknowledged before the judge and returned to them by the latter, who was their agent for that purpose. And if there was any objection to the deed itself, or to the description of the premises therein, or if the defendant wished the nominal incumbrance of the mortgage to Eason removed, it was his duty to make the objection, so as to give them an opportunity to obviate it; which they probably could have done at once. (*Winne* v. *Reynolds*, 6 *Paige's Rep.* 410.) From the testimony in the case, how-

ever, I think it is wholly improbable that there was any material variance between the store and lot contracted to be sold, and the premises as described in the deed. It is true the contract calls the store fifty-six feet front and rear, and the deed describes the lot as being nineteen feet wide. The contract, however, describes the store as extending to the centre of the wall on each of the sides ; and the deed also describes each of the side lines of the lot as running through the centre of the partition walls between the store on the premises and the stores adjoining the same. There is very little doubt therefore, that the words front and rear, in the contract, were intended to describe the length of the store from front to rear, instead of the width thereof in front and in rear ; although the latter appears to be the more appropriate meaning of the language used in the agreement. But the description of the visible monuments— the side walls themselves—will control, as being more certain than the specified distance. The deed therefore will include the whole building to the centre of the side walls thereof, be the distance either more or less than the specified number of feet. And a conveyance in the very language of the description in the contract would convey nothing more. As both parties were in the store at the time, and could see the probable width thereof, there was no mistake, as to the subject matter of the contract, which could authorize either to resile from the agreement.

The variance between the written contract, as set out in the bill, and the contract as actually made by the parties, is wholly immaterial, for the language of each means the same thing. The lot in rear of the store was called a lane, because by the recited agreement between John McWhorter and the owners of the adjoining lots, it was to be kept open for that purpose. Hence it is described in the contract as the lot in the rear, or lane ; that is, the lot in the rear of the store which is sometimes called a lane.

The only real question in this case, therefore, is, whether the agreement of the 2d of February, 1839, was subscribed by McWhorter, or his agent duly authorized for that pur-

pose, so as to make it a valid and binding agreement with-in the provisions of the revised statutes requiring contracts for the sale of lands to be in writing. The former statute of frauds only required such contracts to be signed by the party who was attempted to be charged upon the contract. Hence the question frequently arose whether the purchaser could not be charged upon his contract, although such contract was not signed by the vendors so as to make it legally binding upon them. No such question, however, can arise upon the present statute, which renders the contract for the ⁰sale of lands void, unless the contract, or some note or memorandum thereof expressing the consideration, is in writing, and subscribed by the party by whom the sale is to be made. (2 *R. S.* 135, § 8.) And in the recent case of *Townsend* v. *Hubbard & Orcutt,* (4 *Hill's Rep.* 351,) the court for the correction of errors decided that the vendees were not liable upon a contract, which they had themselves signed, because it was not properly executed by the vendors, or their agent, so as to make it a valid contract under this provision of the revised statutes. Here the sale was to be made by both the complainants; and it was necessary, therefore, that the agreement should be signed by both of them, either in person or by an agent duly authorized, in order to make it a valid contract of sale, under this provision of the revised statutes. It was not personally signed by the complainant McWhorter ; as the signature of the names of McWhorter & Baldwin to the agreement is proved to be in the hand writing of the complainant Baldwin. Was it then signed by Baldwin for McWhorter, as his lawfully authorized agent for that purpose ?

It is insisted by the appellant's counsel, that to constitute a lawfully authorized agent to make a contract for the sale of land he must have a written authority. Such, however, was not the construction which had been put upon the former statute of frauds ; and the revised statutes have not changed the law in this respect. The 9th section of the act of February, 1787, for the prevention of frauds, (1 *R. L.*

of 1813, *p.* 78,) required conveyances and leases, which were to transfer an interest in lands *in præsenti*, to be signed by the party, or by his agent lawfully authorized by writing, in order to render them valid either at law or in equity. And the language of the 10th section was the same in this respect. But in the 11th section, which related to executory contracts for the sale of lands, &c. the words " by writing" were left out; so that it was only necessary that the agreement should be signed by an agent lawfully authorized. Under this section, and under the corresponding provision in the English statute of frauds, it had long been settled that to make a valid executory contract for the sale of lands, or of an interest therein, it was not necessary that the authority of the agent should be in writing ; but only that the agreement itself should be in writing, and should be signed by him as such agent. ( *Coles* v. *Trecothick*, 1 *Smith's Rep.* 233. *Barry* v. *Lord Barrymore*, 1 *Sch. & Lef.* 29. *Clinan* v. *Cooke, Idem*, 22. 1 *Sugden on Vend.* 186, 10*th Lond. ed.*)

There is certainly some danger of fraud and perjury in permitting the authority of an agent, to contract for the sale of the lands of another, to be established by parol. And the revisers proposed to remedy the supposed defect in the former law, by requiring that the agent who signed such a contract should be authorized by writing ; and they reported the 9th section of the title of the revised statutes respecting fraudulent conveyances and contracts, accordingly. But the legislature struck out the words "authorized by writing," which were contained in that section as it was reported by the revisers, and substituted the words " lawfully authorized," as contained in the previous statute on the subject. It is only necessary, therefore, to establish the fact, by parol, that the person signing such a contract, as agent for the seller, was lawfully authorized to sign it as such agent. And the supreme court, in the recent case of *Lawrence* v. *Taylor*, (5 *Hill's Rep.* 107,) consider this as the proper construction of this section of the revised statutes.

The testimony in this case, as to the authority of Bald-

win to sign the name of McWhorter to the contract, in connection with his own, is such as to leave no doubt on the subject. Both concurred in the making of the contract, and were together when it was signed by one, in the names of both, as well as by the defendant. And both executed the deed, a few days afterwards, for the purpose of carrying into effect the agreement which had thus been made by them. I think the vice chancellor was therefore right in decreeing a specific performance of the agreement ; in case the complainants should appear, upon the master's report, to be able to make a good title to the premises.

The decretal order appealed from must be affirmed with costs. And the proceedings are remitted to the vice chancellor, with directions to refer the matter to any master in the county of Chautauque, if the particular master named in the decretal order is no longer in office.