13b 137
27ap406

THE COHOES COMPANY *vs.* CHARLES F. GOSS, A. C. BENTLEY and others.

On the 24th of November, 1847, G. executed a mortgage to the plaintiffs to secure the payment of $14,000. On the same day the plaintiffs assigned the mortgage to the Albany Exchange Bank to secure the payment of $6000, and the bank, on the same day, assigned the same to the comptroller. On the 17th of December, 1849, the comptroller assigned the mortgage to the Exchange Bank, and on the day following, the bank assigned the same to the plaintiffs; they having paid their debt to the bank. In an action by the plaintiffs against G. the mortgagor, and B., to foreclose the mortgage, B. claimed to be the owner of the mortgaged premises, by virtue of a previous foreclosure of the mortgage, under the statute, and the purchase thereof by him, at the sale. It appeared that on the 12th of April, 1849, *while the mortgage was in the hands of the comptroller,* proceedings were instituted in the name of the *Exchange Bank* as assignee of the mortgage, to foreclose the same, under the statute; and that on the 23d of July, 1849, the premises were offered for sale at public auction, and were struck off to

Cohoes Company *v.* Goss.

B., who, in the afternoon of the day of sale, tendered the amount of his bid to the attorney conducting the sale; that the latter then said he had made no sale to B., and had not made out any affidavit for any one. There was no proof that the affidavits required by the statute had ever been made or filed; or that B. had paid the amount of his bid; or that any deed had been delivered to him. In the spring of 1848, the comptroller authorized the Exchange Bank to receive the *interest* on the mortgage. There was evidence tending to show that the proceedings to foreclose the mortgage, although in the name of the Exchange Bank, were instituted by the plaintiffs and conducted by their attorney, for their benefit. *Held* that the comptroller, and not the bank, being the assignee of the mortgage at the time of the alledged foreclosure, and the mortgaged premises not having been advertised or sold in the name of the comptroller as the assignee of the mortgage, as required by the statute, but in the name of the bank, there was no regular foreclosure of the mortgage, so as to convey a valid title to B., upon his purchase of the premises.

*Held also,* that the fact of the foreclosure in the name of the Exchange Bank having been made by the plaintiffs, for their own benefit, and conducted by their attorney, did not estop the plaintiffs from insisting, in this action, that the mortgage had not been regularly foreclosed.

The statute gives no effect to a foreclosure by advertisement unless conducted as prescribed in the statute. There must be an affidavit of the fact of the sale, made by the person who acted as auctioneer; an affidavit of the publication of the notice of the sale, made by the printer of the paper, or his foreman; and an affidavit of the affixing a copy of the notice on the outer door of the court house.

When these affidavits are filed and recorded they are a substitute for a deed. But until such affidavits are made, filed and recorded, or a deed given in pursuance of the sale, no title passes to the purchaser.

The rule as to estoppels *in pais,* as well as those by deed, is that both parties must be bound, if either.

THIS action was brought to foreclose a mortgage. The facts on the part of the plaintiffs were, that on the 24th day of November, 1847, the defendant, Charles F. Goss, executed to the plaintiffs a bond in the penalty of $28,000, conditioned to pay $14,000 in ten years, with annual interest, and $200 of the principal on the first day of April in each year; and at the same time he executed to the plaintiffs a mortgage with a like condition, as collateral security for the payment of the sum mentioned in the condition of the bond. On the same day the plaintiffs assigned the said bond and mortgage to George W. Stanton, president of the Albany Exchange Bank, to secure the payment

Cohoes Company *v.* Goss.

of $6000. On the same day George W. Stanton, as president of the said bank, assigned the said bond and mortgage to the then comptroller of the state. On the 17th of December, 1849, the then comptroller assigned the bond and mortgage to Samuel Pruyn, president of the said bank, and he on the 18th day of December, 1849, assigned the said bond and mortgage to the plaintiffs, and they then paid their indebtedness to the said bank. The two defendants above named answered the complaint. The only answer which need be noticed is that of Alonzo Bentley. His answer in substance was, that he was the lawful owner of the mortgaged premises, by virtue of a foreclosure of the mortgage and a sale of the said premises under and by virtue of the said mortgage. That the Albany Exchange Bank, as the assignee of the said mortgage, by D. McElwain their attorney, in a certain newspaper printed and published in the county of Albany, advertised the mortgaged premises to be sold at a certain place on the 16th of July, 1849, at ten o'clock in the forenoon; that the said McElwain then acted as auctioneer and duly sold the premises to the said defendant, Alonzo Bentley, and that by virtue of that sale, he has ever since claimed and held the premises in fee; and that although the mortgage was nominally assigned to the Exchange Bank, the plaintiffs retained an interest therein, and that the notice of sale was published as well under the immediate agency and direction of the plaintiffs as of the said bank, and the said McElwain acted in the publication of the said notice, and in conducting the said sale as auctioneer, not only as the attorney of the said bank, but also as the attorney of the plaintiffs; and that the sale to the said Bentley was made by the plaintiffs and for their benefit, as well as by the said bank and for its benefit, and that the plaintiffs are estopped from setting up any claim to said premises by virtue of the mortgage. The plaintiffs, by their reply, denied all the material allegations in the answer, and set out the various assignments above mentioned, and alledged that the said Bentley had not paid or tendered any money in pursuance of his bid. The cause was brought to trial on the 12th day of June, 1851, at a circuit court held in the county of Albany, before Mr. Justice Harris. The

plaintiffs then gave in evidence the bond and mortgage and the various assignments thereof above mentioned, and proved that there was then due on the bond and mortgage the sum of $17,135,99. The defendant Bentley then gave in evidence the advertisement of sale mentioned in his answer, and proved by Cornelius Ackerman that it was regularly published for thirteen full weeks; that the notice was brought to the printing office by D. McElwain, and that at his request an affidavit of the publication thereof was made; that the said McElwain was an attorney and acted as such; that F. S. Claxton acted as the agent of the plaintiffs at the village of Cohoes; the advertisement was in the name of the Albany Exchange Bank, assignees, and signed D. McElwain, attorney. It was also proved that in the years 1847 and 1848 F. S. Claxton acted as the agent of the plaintiffs; that he negotiated the loan of the said bank for the plaintiffs; that in the spring of the year 1848 the said Claxton applied to the bank for authority to collect the interest on the said bond and mortgage; that the bank gave him a statement to get permission from the comptroller before the bank would give him authority to collect the interest; such permission was given to the plaintiffs. It was also proved that at the time mentioned in the advertisement for the sale, D. McElwain as auctioneer, put up the mortgaged premises for sale, and that the defendant A. Bentley made the highest bid, and McElwain struck off the property to him, and said to him, " the property is yours ;" and Bentley said, " make out the amount of your costs, and the money is ready for you." That on the day of the auction, and between four and five o'clock in the afternoon, Job Olin, for and on behalf of the defendant Bentley, tendered to Mr. McElwain the amount of the defendant's bid, and McElwain then said he had made no sale to the defendant Bentley, and said that he had not made out any affidavit for any one. It was also proved that in the year 1849, McElwain acted as attorney for the plaintiffs; it was so generally understood in the village, as much so as it was that Claxton was their agent.

Mr. Justice Harris decided that the defendant had not shown a regular foreclosure of the mortgage, and that he had not

Cohoes Company *v.* Goss.

shown such a state of facts as estopped the plaintiff from insisting that the mortgage had not been regularly foreclosed; to which opinion the counsel for the defendant Bentley excepted. The said justice directed the jury to find a verdict for the plaintiffs; to which the defendants' counsel excepted.

*D. McMartin,* for the plaintiffs. I. The plaintiffs' evidence shows that they are entitled to judgment for the foreclosure of the mortgage set out in the complaint. The execution of the bond and mortgage is proved, and the plaintiffs are now shown to be the holders and owners of the bond and mortgage. It is also proved that $17,135,99 was due at the time of the trial. II. The defendants' evidence did not show that the mortgage had been previously foreclosed, or that Bentley became a purchaser under a previous foreclosure. (1.) The notice of foreclosure was never posted. (2.) No copy of the notice was served on the mortgagor or on any subsequent incumbrancer. (3.) At the time of the pretended foreclosure the title to the mortgage was in the comptroller and in the Cohoes Company; the notice of foreclosure is in the name of the Albany Exchange Bank; it was not given, either by the plaintiffs or the comptroller, and is therefore irregular. (2 *R. S.* 450, *2d ed. Wilson* v. *Troup,* 2 *Cowen,* 195, 230, 231.) (4.) The Albany Exchange Bank had no power to foreclose the mortgage. The power of sale contained in the mortgage could only be executed by the plaintiffs and the comptroller, the then assignee. (2 *Powell on Mort.* 285.) (5.) The comptroller gave the Albany Exchange Bank authority, simply to receive the interest, pursuant to section five of the law of 1838. The bank could not give the plaintiffs any greater power or authority than they derived from the comptroller, to wit, authority to receive interest. They could not impair the security in the hands of the comptroller by foreclosing the mortgage for the interest; much less by foreclosing for a part of the principal, which they had no authority to receive. (6.) No conveyance was made to the defendant Bentley, nor any affidavit of sale to him; and he could not acquire an interest in the land, except by an instrument in writing. III. The plaintiffs

are not estopped from insisting that the mortgage has not been regularly foreclosed. (1.) The plaintiffs' agent could not do any act which would estop them. At all events, he could not, unless the act was clearly within the scope of his authority, and he was at the time assuming to act for the corporation. In this case, there is no evidence showing that he pretended to act for the plaintiffs. He was present at the pretended sale, and made a bid, and had some consultation with the attorney; but for aught that appears, he acted for himself, individually, and not for the plaintiffs. It is not shown, that he was acting within the scope of his authority. (2.) It does not appear that the plaintiffs, by their assent, or otherwise, have made any admission inconsistent with the claim or title here set up, or that the defendant has acted on any admission of theirs, or their agents, or that he would be injured by allowing the truth of any of their admissions to be disproved; and unless all these things have happened, the plaintiffs are not estopped. (*Dezell* v. *Odell*, 3 *Hill*, 215.) (3.) Estoppels are not favored in the law. An estoppel in pais is never allowed to be used as an instrument of fraud, but is resorted to solely as a means to prevent injustice. (*Pierrepont* v. *Barnard*, 5 *Barb.* 364.) If an estoppel be allowed in this case, great injustice will be done to the plaintiffs; if not allowed, the defendant will not lose any thing but an opportunity to wrong the plaintiffs.

*S. Stevens*, for the defendant Bentley. I. The testimony showed a regular statute foreclosure of the mortgage mentioned in the pleadings, and that the defendant Bentley became the purchaser at the sale on such foreclosure, and consequently, entitled to the papers necessary to render the title in him. This constituted a perfect defense to this action. The testimony is sufficient to maintain an action by the defendant Bentley, against the plaintiffs, to compel a specific performance or continuation of the title, acquired by Bentley by his bidding off the property on the sale under the mortgage. II. But if there were any irregularity in the foreclosure, or any want of authority in the plaintiffs, to make such foreclosure in the name of the Albany

Exchange Bank, the plaintiffs are estopped, to raise that objection in this action. (1.) The evidence shows, that the foreclosure in the name of the Albany Exchange Bank was made by the plaintiffs for their own benefit. If there was any doubt about this question, it should have been submitted to the jury; and it not having been submitted to the jury, it must now be assumed as having been conclusively proved, inasmuch as the defendant has a right to assume that the jury would have so found. (2.) The defendant has acted upon the authority assumed by the plaintiffs; and if they had no such authority, they cannot alledge that fact for their own benefit, and to the prejudice of the defendant Bentley. (*Welland Canal Co.* v. *Hathaway*, 8 *Wend.* 483. *Presbyterian Congregation* v. *Williams*, 9 *Id.* 147. 19 *Id.* 563. 21 *Id.* 94, 172.) III. The court should, therefore, order judgment for the defendant, Bentley, or award a *venire de novo*

*By the Court*, CADY, J. The only question is, did the judge before whom the cause was tried, err in deciding that the defendant, Bentley, had not shown a regular foreclosure of the mortgage, nor shown such a state of facts as estopped the plaintiffs from insisting that the mortgage had not been regularly foreclosed? If he did not err in so deciding, then he certainly did not err in directing the jury to find a verdict for the plaintiffs. The evidence in the cause shows that at the time the defendant alledges that he purchased the mortgaged premises, the comptroller was the assignee of the bond and mortgage, and the mortgaged premises were not advertised or sold in his name, nor was he named in the advertisement of sale as the assignee of the mortgage, as required by 2 R. S. 2d ed. 450, 2d subdivision of section 4.

The defendant, Bentley, put his defense on the ground that he was at the time he answered, the true and lawful owner of the mortgaged premises, by virtue of a foreclosure of the mortgage mentioned in the complaint, and a sale of the premises under and by virtue of said mortgage and foreclosure. He alledged various facts, in his answer, in order to show that there

was a regular statute foreclosure, and among others that a copy of the notice was affixed on the outer door of the building where the county courts of the county of Albany are directed to be held, at least twelve weeks prior to the time therein specified for the sale of the said premises, and that allegation was denied by the plaintiffs, and no evidence offered to prove it. Unless a notice was so affixed there could not have been a valid foreclosure. It was for the defendant to prove that fact. The statute gives no effect to a foreclosure unless conducted as prescribed in the statute. There must be an affidavit of the fact of the sale, made by the person who acted as auctioneer; an affidavit of the publication of the notice of the sale made by the printer of the paper in which it was published, or his foreman; and an affidavit of the affixing a copy of the notice on the outward door of the court house; and when these affidavits are filed and recorded they are a substitute for a deed. (*Laws of* 1838, *ch.* 266, § 8.) But until such affidavits be made, filed and recorded, or a deed given in pursuance of the sale, no title passes to the purchaser. (*Arnot* v. *McClure,* 4 *Denio,* 41.) It is therefore certain that the defendant gave no evidence that he is the "true and lawful owner of the premises mentioned in the complaint, by virtue of a foreclosure of the said mortgage."

Upon the argument it was insisted, on the part of the defendant, "that the testimony was sufficient to maintain an action by the defendant, Bentley, against the plaintiffs, to compel a specific performance, or a continuation of the title by his bidding off the property on the sale under the mortgage." But has the defendant set up such a defense in his answer? In his answer he claims "that he is the lawful owner of the premises." He does not set up any executory contract of which he has a right to a specific performance, and thereby acquire a title to the premises. He has not alledged in his answer, that he paid or offered to pay, or was ready and willing to pay, any consideration for the premises. And suppose he succeeds in this action upon that answer, he will hold the premises without paying any consideration. Had he intended to rely upon any executory contract which gave him an equitable right to hold possession, he

Cohoes Company *v.* Goss.

should have stated the terms of the contract, and averred a readiness to perform on his part.

Again, it was insisted on the part of the defendant "that if there were any irregularity in the foreclosure, or any want of authority in the plaintiffs to make such foreclosure in the name of the Exchange Bank, the plaintiffs are estopped to raise that objection in this action." What, according to the answer of the defendant, have the plaintiffs done by which they are estopped? The defendant alledges that although the mortgage was assigned to the Exchange Bank, the plaintiffs had an interest therein; that the notice of sale was published as well under the immediate agency and direction of the plaintiffs, as of the bank; that McElwain acted in the publication of said notice, and in conducting the sale as auctioneer, not only as the attorney of the bank, but also as the attorney of the plaintiffs, and that the said sale to the defendant was made by the plaintiffs, and for their benefit, as well as by the bank, and for the benefit of the bank. Suppose all this be true, does it estop the plaintiffs from alledging that neither the bank nor themselves were then the owners of the mortgage, or had any power to sell the mortgaged premises; or does it estop the plaintiffs from alledging that the sale was irregular and void, because the notice of sale was not affixed on the outer door of the court house? If a man sells a piece of land to which he has no title, and receives a thousand dollars for it, and gives a quit-claim deed, and afterwards acquires a title, he is not estopped from alledging that he had no title when he gave the quit-claim deed. (4 *Kent's Com.* 98, 99.)

In this case, there has been no deed or covenant of warranty on the part of the plaintiffs; nothing so solemn as even a quit-claim deed. Nay, they have not, by themselves or their agent, signed any paper whatever. The plaintiffs, then, are not estopped by deed. If estopped at all, it must be by matter *in pais*. What have they done? It is said that D. McElwain, by their authority, and as their attorney, published a notice that the premises in question would be sold at public auction at a certain time and place, by virtue of a power contained in the

said mortgage; at the time and place mentioned in the notice, the defendant attended and made the highest bid for the property, and McElwain struck it off to him, and said that the property was his. Who was estopped or bound by that? Was the defendant bound to pay his bid without he was furnished with all the affidavits required by statute, to show the regularity of the foreclosure? Was he not at liberty to say, "I find that the mortgage under which you have been pretending to sell, does not belong to the Exchange Bank, but to the comptroller of the state. I find the notice of sale has not been affixed to the outer door of the court house," and might say, "I have not yet signed any memorandum binding myself to make the purchase, nor have you yet given me any note or memorandum that you will give me a title; and I will not, therefore, pay my bid." The rule as to estoppels *in pais,* as well as those by deed is, that both parties must be bound if either. (*Welland Canal Co.* v. *Hathaway,* 8 *Wend.* 484.) If he was not bound when his bid was accepted, no one was. If he, immediately after his bid was accepted, might have said, "I retract my bid, you have not given me any note or memorandum that the land shall be conveyed to me, nor have I signed any agreement to pay my bid, and I will not do it." Neither party was bound by what was said or done at the auction. ( 2 *R. S. 2d ed.* 69, §§ 6, 8, 9.)

Suppose the owner of a farm should, in a public assembly, offer it for sale to the highest bidder, and a person should bid $1000, and the owner of the farm should say to him, you are the highest bidder, the farm is yours; would either be bound? If not, neither party was bound in this case. The language of the statute is, that every contract for the sale of lands, shall be void, "unless the contract or some note or memorandum thereof expressing the consideration, be in writing, and be subscribed by the party by whom the lease or sale is to be made, or by the agent of such party, lawfully authorized." Let it be granted that D. McElwain was the lawfully authorized agent of the plaintiffs, and of the Exchange Bank; neither he nor they have signed any contract, or any note or memorandum thereof, of which a specific performance could be decreed in any court.

Clark *v.* Hughes.

(*Mc Whorter* v. *McMahan*, 10 *Paige*, 386,) shows that the vendor or his agent must sign the contract or memorandum thereof. *Coles* v. *Bowne*, (*Id.* 535,) is to the same effect. *The Trustees of the Baptist Church of Ithaca* v. *Bigelow*, (16 *Wend.* 28,) shows that the memorandum of the sale made by the agent of the vendor must contain all the terms of the sale— no part can be supplied by parol. I am, therefore, of opinion that the motion for a new trial should be denied, with costs.

New trial denied.

[WARREN GENERAL TERM, May 3, 1852. *Willard, Hand., Cady*, and *C. L. Allen*, Justices.]