Van Vorst, J.
In determining the issues raised in this action, under the pleadings and evidence, it becomes necessary to decide whether either of the objections raised by the plaintiff to the goodness of the title tendered by the defendant to the plaintiff, of the land which the plaintiff had agreed to purchase of the defendant, is valid. By the terms of sale, the balance of the purchase-money was required to be paid on June 27, 1879, at an hour and place specifically desig *44 noted, when and where the deed would.be ready for delivery. The property was sold by a good title in fee simple, and was to be conveyed by an executor’s deed, free and clear of all incumbrances, except an outstanding lease, the purchaser to take the rents from the first day of July.
1 At the time and place appointed the parties attended, with their counsel. A proper conveyance was tendered to the plaintiff—that is, proper as to form. The plaintiff, however, objected to take the title, for the reason, as he stated, that the defendant could not give and convey the lot and premises by a good and undisputed title in fee simple, free and clear of all incumbrances.
The general objection was reduced, however, to three specific points, in respect to which the title was deemed defective.
The first was that the defendant could not give a good title to about fifteen inches of the lot and premises, for the reason that the defendant’s testatrix never had a legal title thereto.
The second was that there was outstanding, and unsatisfied of record, a valid lien upon the lot and premises, or a portion thereof, by way of a mortgage thereon, made by Thomas Webb, the husband of defendant’s testatrix, and said testatrix, to one John Steele Kearns for $1,000 and interest, payable November 15, 1847, and dated November 15, 1844, which was duly acknowledged, and was recorded,in the register’s office of the city and county of New York on November 12, 1845.
Third, that there was outstanding, and unsatisfied of record, a valid lien or incumbrance upon the premises, or a portion thereof, by way of an unpaid Croton water rent, for the year 1879, for the sum of $17.
These objections will be considered in the inverse order in which they are above presented.'
*45 And first, with regard to the Croton water rent:
It was proved on the trial that the existing lease of • the premises required the then tenant to pay the water rent. It is conceded that when the parties met to close the title the defendant believed it to be paid, and that when, on- that occasion the plaintiff’s counsel informed him that it was not paid, he offered either to pay it immediately, or, at the option of the plaintiff, to allow him to reserve the amount out of the unpaid purchase-money.
It appeared on the trial that the place where the parties had met to close the transaction and the place of payment of the water rent were near to each other, and that the payment of the rent would not have delayed the consummation of the sale more than half an hour, and that the plaintiff refused either to wait while the payment was being made by the defendant, or to reserve the amount out of the purchase-money. The day fixed for closing was Friday, and the next Monday the defendant caused the water rent to be paid.
Thereupon he informed the plaintiff of such payment, and requested him to complete his purchase, which he refused to do, and the defendant thereafter and before the commencement of this action again tendered to the plaintiff the deed of the premises and requested him to complete the purchase, which he refused.
I apprehend that the bare statement of these facts disposes of this objection, adversely to the plaintiff.
The objection is exceedingly technical, under the facts, and has no merits. It would seem to be idle to waste time in searching for authorities to answer such an objection. In an action by the vendor for the specific performance -of an agreement to purchase real estate, it is sufficient if he can make title at the time of the decree (Clute v. Robison, 2 Johns. 595; Jenkins v. Fahey, 73 N. Y. 355; rev’g 11 Hun, 351; Christian v. *46 Cabell, 22 Graft. 82; More v. Smedburgh, 8 Paige, 600, 605).
The defendant was ignorant of the existence of the lien; the plaintiff had discovered it before the day-fixed for closing the .matter. I think that he might ■ well have called the attention of the defendant to the lien, and it is quite clear that it would have been removed in season to have obviated the objection.
The chancellor evidently so thought in McWhorter v. McMahan (10 Paige, 386, 391), Winne v. Reynolds (6 Id. 407). I do not regard the first objection as well taken. .
In regard to the second objection, it must meet the same fate .as the first. The mortgage to Kearns was not in truth an incumbrance on the day fixed for closing the title. In the absence of any evidence of part payment, or written acknowledgment of indebtedness, the presumption that it was paid, was conclusive (2 R. S. 301, § 48 Code Civ. Pro. § 381).
Upon the trial, positive evidence of payment was adduced, in the form of a satisfaction-piece proved to have been executed by the mortgagee, although not so authenticated as to be capable of being put on.record.
• The question is not whether some person may not, in the future, possibly make a claim under this stale mortgage, but what will be the fate of such proceed- ■ ing? He must, under the facts, inevitably fall. Unfounded claims are often made only to be defeated. To justify the court in a refusal to order specific performance, there must be some debatable ground upon which a doubt can rest.
In Dunham v. Minard (4 Paige, 441, 443), the chancellor says, “the purchaser is only authorized to object to the title when there is a probability that some other person has a valid claim or subsisting lien upon the premises.”
In Giles v. Baremore (5 Johns. Ch. 545, 552), Chan- *47 cellar Kent lays it down as an established rule, both at law and in equity, that a mortgage is not evidence of a subsisting title or interest in the mortgagee, if he has not entered under the mortgage and there has been no interest paid or demanded for twenty years. Belmont v. O’Brien (12 N. Y. 394) is an authority that this mortgage, under the facts in evidence, constitutes no objection to the title.
In Malloy v. Vanderbilt (4 Abb. N. C. 127) I had occasion to examine the rule in equity with regard to the presumption of payment from lapse of time, and its effect (see also Townshend v. Townshend, 1 Abb. N. C. 81, 86). The result reached in these cases justifies me in the conclusion already stated, that the record of the mortgage, accompanied by the satisfaction thereof, produced on the trial, although not recorded, constitutes no valid objection to this title.
And a word is proper to be added with respect to the fact that the satisfaction-piece was not produced until the trial.
The defendant had no knowledge that this mortgage ever existed until he was informed of it by the counsel for the vendee, when they met to close the title. He was not, therefore, put to any search or inquiry with respect to it until he received such notice, when the satisfaction-piece was found among the papers of the defendant’s testatrix. Frankness and fairness between men, it appears to me, would demand that such apparent defect, arising under an old mortgage, discovered by one side, should be seasonably disclosed to the other before the day of closing the title, to the end that it might be explained and the force of the objection, if valid, might be, if possible, obviated (More v. Smedburgh, supra).
The attention of the court is called by the plaintiff’s counsel to the laws of 1862, and the amendments thereof, in respect to the discharge of mortgages in *48 certain cases (L. 1862, p. 610; L. 1868, c. 798; L. 1873, p. 862; Matter of Townsend, 4 Hun, 31).
Bnt these statutes do not affect the question we are now considering, as to the presumption of payment arising from lapse of time. A court of equity makes these presumptions on the facts before it. They are matter of evidence. There is clearly enough in the evidence, as already observed, to show that the mortgage is not only presumed to be paid, but is so actually, and that it is not in fact a lien or incumbrance on the land, and that no person can successfully interpose any claim, legal or equitable, thereunder.
The remaining objection relates to fifteen inches of the land on the easterly side of the premises. The plaintiff’s objection to the defendant’s title to these fifteen inches is unfounded in law and in fact.
The evidence shows that the defendant’s testatrix had a perfect paper title to the entire lot, as in possession, including the fifteen inches.
Timothy Hedges, through whom the title to the lot in question and the lot lying between it and Market street is derived, was the owner of the north half of both lots 31 and 32 on the Rutgers map.
On February 1, 1882, Hedges conveyed a lot to George Lorillard in fee, by the following description: “All that certain lot, piece or parcel of ground, situate, lying and being in the Seventh Ward of the city of New York, being part of the farm of Hendrick Rutgers, deceased, and which is known and distinguished on a map of the estate of the said Hendrick Rutgers, deceased, filed in the office of the Register of the City and County of New York, made by Bridges and Poppleton, on the 15th day of November, 1813, as the north half of lot number 82, and which said north half of lot number 32 is bounded as follows : northerly on Division .street; easterly on Market street; southerly by the south half of said lot No. 32 ; and westerly by *49 lot No. 31; and containing, in front and rear, 18 feet 9 inches, and in depth, 67 feet 2 inches, he the same more or less.”
That lot has been conveyed by substantially the same description down to the present time. In 1842 it was owned by Stephen R. Saxton, claiming title through a regular chain of conveyances under the fore-going deed.
A threC-story brick building then stood on the lot, which still stands, and the walls of that building and the fences in the rear exactly correspond with the measurements given in the deed.
On May 1, 1832, Timothy Hedges, by deed duly recorded, conveyed to Joseph W. Griffiths the premises which have given rise to this action, by a description as follows: 16 All the north half of a certain lot of land, situate in the Seventh Ward of the City of New York on the south side of Division street, and distinguished on a map * of land of Hendrick Rutgers, made by Poppleton & Bridges, and filed in the office of the Register of the Comity of New York, as lot No. 31, and is bounded and described as follows: North, in front, by Division street; east by half lot No. 32; west by half lot No. 30, and south, in the rear, by south half of lot No. 31. Being 20 feet, front and rear, more or less, and extending half way from Division street to Harmon street.”
The defendant claims under this deed, and his title is deduced by a regular chain of conveyances, in all of which substantially the same description is used, and under this title Thomas Webb, the husband of the defendant’s testatrix, had possession of the lot in question, being twenty feet in width, and beginning eighteen feet and nine inches from Market street, for nearly forty years.
*50 This line of conveyances constitutes a perfect title to the lot in question as in possession. Hedges, the original owner of the northerly half of lots 31 and 32, conveyed all that he owned. Lot 31 he bounded on the east by lot 32, and 32 he bounded on the west by 31. By his two deeds he constituted his two grantees adjoining owners, and reserved nothing to himself.
It is impossible to draw the line of separation between these two lots anywhere except where the parties themselves drew it by their improvements—that is, eighteen feet and nine inches from Market street. .In addition, the line is fixed and established, and the defendant’s title is perfect, by practical location (Reed v. Farr, 35 N. Y. 113).
To establish the practical location of a boundary line it is not requisite to prove an actual, agreement, but acquiescence in its location, even if erroneous, with occupation in accordance with it for a sufficient length of time to bar an entry, will suffice (Swettenham v. Leary, 18 Hun, 284; Baldwin v. Brown, 16 N. Y. 359). The evidence upon this point is clear, to a degree rarely attained.
It seldom happens that it is possible to prove possession and location for so long a time with completeness.
But in this case, by the testimony of living witnesses, an uninterrupted and unquestioned occupation of the premises in question, according to hhe present lines, is shown ever since the year 1840.
The lot in question vras entered upon and occupied according to its present lines, under a master’s deed, by Mr. Webb, in 1843. That occupation has continued ever since, and the premises have all the time been inclosed within substantial walls and fences.
There should be judgment denying the plaintiff’s prayer for a return of the purchase-money paid ; and there should be an affirmative judgment in defendant’s *51 favor, decreeing a specific performance of the contract, with costs of this-action.
On an appeal to the general term, they rendered the following opinion :
Brady, J.
It appears from the evidence in this case that the plaintiff, on June 5, 1879, purchased from the defendant a house and lot in this city, and declined to complete the purchase for certain reasons stated in the objection to the title. One of them was the existence upon record of a mortgage which had not been discharged. It was due, however, in 1847, more than thirty years prior to the contract of purchase mentioned. It seems to have been satisfactorily established that the defendant was not aware of the existence of the mortgage as a lien or incumbrance upon the property, and was not advised in regard to it by the plaintiff, until the day on which the contract was to be performed by the delivery of the deed. I)pon the trial it was also proved satisfactorily that the mortgage had been discharged, though not of record, by proof of the execution of a satisfaction-piece in reference to it.
The learned justice who presided at the trial held all the objections unavailable ; awarded the costs of the litigation against the plaintiff, and decreed a specific performance of the contract by the latter.
It appears from the points submitted, that the plain tiff does not object to the completion of the purchase, but feels aggrieved at the imposition of the costs of this controversy, which seems to be the chief reason for this appeal. The court below was evidently influenced in its judgment by the presumption of law that the mortgage was discharged, in consequence of the long time which had expired between the time when it became due, and the time at which the trial took place, or it would seem that costs would not have *52 been imposed upon the plaintiff. If, when the deed was tendered, ■ on the second occasion of that ceremony, the satisfaction-piece which was subsequently exhibited, had been shown to the plaintiff, there would have been more justice in subjecting him to costs. The existence of the niortgage made his title a doubtful one, because the mortgagee, or his representatives, might have in his^or their possession, notwithstanding the long time which had expired, some promise to pay it, or there might have been such facts and circumstances existing as would continue it between the prior parties. The plaintiff was justified in adopting measures to secure the removal of any doubt, and was right in bringing this action, in which a result ensued. A doubt of the title being unincumbered having existed, as already suggested, afid the defendant having omitted, when the tender was made a second time, to produce and exhibit the satisfaction-piece, the imposition of costs does not seem to have been equitable.
The judgment should therefore be reversed as to costs, and judgment rendered without costs to either party, and no costs should be allowed upon this appeal to either party, the judgment appealed being upheld except in the respect mentioned.
Davis, P. J., and Barrett, J., concurred.

By this map both of the lots appeared to be twenty feet wide, and lot 31 appeared to be twenty feet instead of eighteen feet nine inches from Market street.