Arnot v. McClure.

---

## ARNOT vs. McClure.

Where, upon a statute foreclosure of a mortgage, a party other than the mortgagee, has become the purchaser, and has received a conveyance from the mortgagor, but no affidavits have been made, the publication of the notices, and the circumstances of the sale may be proved by common law evidence. *Per* BRONSON, C. J.
But if the mortgagee purchase, the foreclosure is not complete without the affidavits, as they stand in the place of a conveyance. *Per* BRONSON, C. J.

Arnot v. McClure.

Where, upon a statute foreclosure affidavits have been made, they are only pre-sumptive evidence, and may be controverted by the mortgagor and those holding under him. *Per* BRONSON, C. J.

But where the mortgagee, on such a foreclosure, becomes the purchaser, and there is consequently no conveyance—the affidavits standing in the place of a deed—they are conclusive upon the purchaser and those claiming his title, and these parties cannot controvert them by parol evidence.

Accordingly, in ejectment brought by one claiming under the mortgagor, against a party holding under the mortgagee who had become the purchaser upon such a foreclosure, where the affidavit of the auctioneer stated a part only of the prem-ises included in the mortgage to have been sold; *held* that it was not competent for the defendant to show that there was a mistake in the affidavit and that the whole mortgaged premises were in fact sold.

Whether, if a stranger had purchased and received a conveyance, evidence contra-dicting the affidavits would be competent to support the title derived under the sale, *quere. Per* BRONSON, C. J.

EJECTMENT for a lot of land in the village of Elmira, Che-mung county, tried before MONELL, C. Judge, at the Chemung circuit in June, 1842. The premises in question were called the McClure lot, which is 13 feet wide and 218 feet deep, with the addition of a " strip," or piece of land on the east 9 feet 7 inches wide, and 20 feet long. The McClure lot, with other adjoining lots, were formerly owned by Clark Winans. On the 1st of May, 1827, Winans conveyed the lots to Joseph Vial and Uriah Smith ; and Vial & Smith on the same day mortgaged the lots to Winans for securing the payment of $600 by the first day of April, 1829, with interest. On a partition between Vial & Smith, in the spring of 1827, the McClure lot fell to Vial in severalty.

The plaintiff made title under a judgment against Vial and others for $776,25, in favor of Rosevelt & Rosevelt, docketed August 6, 1827. An alias *fi. fa.* was issued on the judgment in 1836, by virtue of which the sheriff sold the McClure lot—the premises in question—to the plaintiff, on the 26th of September in that year, for the sum of $600—and on the 14th of March, 1838, the sheriff executed a deed to the plaintiff.

The defendant gave in evidence the mortgage to Winans. In 1829, Winans assigned the mortgage to Arnot & Egberts ; who, in February, 1830, assigned the same to Simeon Benjamin.

Benjamin foreclosed by advertisement and sale under the statute, and the sale took place on the 23d of August, 1830. The lots were sold separately; and Benjamin claimed to have purchased the lot in question for the sum of $350. Affidavits of the publishing and posting notice, and of the person who officiated as auctioneer, were made and recorded pursuant to the statute. But the affidavit concerning the sale of the McClure lot to Benjamin, gave the boundaries of the property sold in such a manner as not to include the "strip," or piece of land 9 feet 7 inches wide by 20 feet long. The defendant is the tenant of Benjamin, and is in possession of the whole of the lot, including the "strip."

The defendant offered to prove by the person who acted as auctioneer on the mortgage sale, that in point of fact he offered and sold the whole of the McClure lot, including the strip, to Benjamin; and that in drawing the affidavit of sale, several clerical mistakes were made in describing the lot. The plaintiff objected, that it was not competent for the defendant to contradict the affidavit; nor to show by parol, that a mistake was made in the description of the premises; nor to prove what particular premises were sold, otherwise than by the affidavit of the auctioneer. The judge rejected the evidence; and the defendant excepted. The judge charged the jury that the plaintiff was entitled to recover the strip of land 9 feet 7 inches wide by 20 feet long; and the defendant excepted. Verdict for the plaintiff in pursuance of the charge. The defendant moves for a new trial on a bill of exceptions.

*B. D. Noxon,* for the defendant.

*J. A. Collier,* for the plaintiff.

*By the Court,* BRONSON, Ch. J. Affidavits showing the regularity of a statute foreclosure, when duly made and recorded, are presumptive evidence of the facts therein contained. (2 *R. S.* 547, § 9 to 12.) Before we had any such statute, the

regularity of the proceedings could only be established by common law evidence; and any kind of common law evidence was admissible. (*See Hawley* v. *Bennett*, 5 *Paige*, 104.) And now, where there are no affidavits, I see no reason why the publishing and affixing of the notice, and the circumstances of the sale, may not be proved in the same manner that they were before the statute was passed. The legislature did not intend to abolish the existing modes of proof; but to furnish an additional and more easy means of making and preserving the evidence, for the benefit of the mortgagee and those claiming under him.

As the affidavits are an *ex parte* proceeding, and are only made presumptive evidence of the facts therein contained, there can be no doubt that they may be controverted by the mortgagor, and those claiming under him. All or any of the facts stated in the affidavits may be disproved. But I doubt whether that can be done by the mortgagee, or those claiming under him. When they resort to this kind of evidence to prove the regularity of the proceedings, and place the evidence on record, I see no principle upon which they can be allowed to controvert it. But however that may be in cases where a deed has been executed to the purchaser, I think it quite clear that the mortgagee, and those claiming under him, cannot contradict the affidavits where they stand as a substitute for a conveyance.

At the common law, the power of sale contained in a mortgage of real estate can only be executed by giving a deed. In 1808, the mortgagee, or his assignee, was authorized by statute to purchase; (5 *Web.* 341, § 5; 1 *R. L.* 375, § 10;) and as he could not convey to himself, it was very justly concluded that the legislature must have intended the foreclosure should be complete without a deed. (*Jackson* v. *Colden*, 4 *Cowen*, 266.) And now, by express enactment, the affidavits may have all the force and effect of a conveyance by the mortgagee to a third person. (2 *R. S.* 547, § 12; *Stat.* 1838, *p.* 263, § 8.) This is in addition to the provision that the affidavits, when recorded, shall be presumptive evidence of the facts therein contained;

and they may now perform the double office, of proving the regularity of the proceedings to foreclose, and standing as a conveyance to the purchaser. If the mortgagee and those claiming under him may contradict the affidavits when they are only used as evidence of regularity, there is no principle upon which that can be allowed when the affidavits also stand as a substitute for a deed. The affidavits are a statute conveyance ; and when they perform that office, the purchaser can no more impeach them by parol evidence than he could a conveyance by deed.

I have spoken of contradicting the affidavits, because this seems to be a case of that nature. The affidavit of the auctioneer states the sale of one piece of land, and the parol evidence was offered to show that in truth the sale was of another piece. But the difficulty will be the same if the parol proof is considered as only tending to supply a defect or omission in the affidavit. If the description of the property sold in the affidavit of the auctioneer can be applied to any part of the McClure lot, it is entirely clear that it does not include the "strip" or piece of land for which the verdict was taken, or any part of it. By allowing the defendant to prove by parol that the strip was in fact sold, we should, in effect, determine that a power to sell lands in fee may be executed without deed, and without the substitute authorized by the statute : in other words, that lands may be conveyed in fee without either a deed or a note in writing, which is directly in the face of the statute of frauds.

Without a conveyance, or a substitute for it in the form of affidavits, the foreclosure is not complete, and the equity of redemption still remains in the mortgagor. Where a deed has been executed to the purchaser, and there are no affidavits, the regularity of the proceedings may be established by any good common law evidence. And though there may be affidavits, it is possible that other evidence would be admissible to supply defects, and show a sale in accordance with the deed. The evidence could not be received to contradict, or in any manner control the legal effect of the deed ; but only for the purpose of

showing that the proper steps had been taken to authorize th$ giving of the conveyance. Where there is no deed, and affidavits supply its place, they can neither be contradicted nor amended by oral evidence. If they do not show a sale of the mortgaged premises, the foreclosure is not complete. Without either a common law or a statute conveyance, the title cannot pass.

Something was said on the argument about supplying the defect in the affidavit of the auctioneer, by procuring from him and recording a new affidavit. Should that course be pursued, it will make a question which we are not now called upon to decide.

If there was no valid foreclosure, it is said that the defendant must then be regarded as a mortgagee in possession, and consequently that the plaintiff cannot recover. But the defendant did not put himself upon that ground on the trial. He insisted on a title in his landlord, Benjamin, by virtue of a foreclosure of the mortgage. This is a bill of exceptions, and we cannot go beyond the questions made on the trial. And besides, it appears from the evidence that the mortgage has been satisfied, and more than satisfied, by the sale of other lands ; and it cannot, therefore, be set up as a subsisting lien upon the premises in question. If the defendant cannot stand upon the foreclosure, he cannot stand at all.

New trial denied.