Howard *v.* Hatch.

## HOWARD *vs.* HATCH.

Where a notice of sale, on a statute foreclosure, was first published on the 30th day of April, and lastly on the 16th day of July, being published twelve times in twelve successive weeks, once in each week, the day named in it for the sale being the 24th of July; *Held* that the notice was published for twelve weeks successively, within the meaning of the statute prescribing the time and manner of publication.

A publication is sufficient, if it be made once in each week for twelve weeks successively, although all the publications are made within 78 days; provided the first is 84 days prior to the day of sale specified in the notice, exclusive of the day on which it is made.

The affidavits of the publication and affixing of the notice of sale, &c., need not be *recorded*, in order to pass the title to the purchaser at a sale of mortgaged premises under a statute foreclosure.

Where a mortgage was assigned to T. as "Treasurer of Madison University, and to his successors in office;" and he took the same, and held it, and foreclosed it by advertisement, under the statute, in his official character, for the corporation; stating in his notice of sale that he, "as such treasurer," was the owner and holder of the mortgage; *Held* that, in the absence of all proof on the subject, the court would presume that T., as treasurer of the corporation, had authority to foreclose the mortgage by advertisement, and to sell the premises. And that, having such authority, his purchase of the premises at the sale, for himself, for a less sum than was due on the mortgage, did not render the sale void, or prevent him from conveying a good title to a purchaser. MASON, J., dissented.

THIS action was brought to recover the possession of ninety-five and three-fourths acres of land, situated in the town

of Madison, in the county of Madison. The land was owned in 1853 by Uriah H. Ward, who executed a mortgage on it to John E. Burton, to secure the payment of $1255.80, and interest thereon, at certain times therein specified. On the 22d of July, 1854, Burton executed, under his hand and seal, and delivered an assignment of the mortgage to Henry Tower; which assignment was as follows: "Know all men by these presents, that I, John E. Burton, the mortgagee within named, in consideration of $1288.92, to me paid by Henry Tower, treas., &c., the receipt whereof is hereby acknowledged, have sold, assigned, transferred and set over to Henry Tower, treasurer of Madison University, and to his successors in office forever, the within mortgage, together with the bond accompanying the same, and all moneys due or to become due thereon; hereby covenanting to and with the said Tower and his successors that the sum of $1288.92 remains unpaid thereon."

The mortgage was foreclosed, pursuant to title 15 of chapter 8 of the third part of the revised statutes, and the amendments thereto, entitled, "Of the foreclosure of mortgages by advertisement." The notice of sale was dated April 28th, 1856. The time specified in it for the sale was July 24th, 1856. The notice contained this clause, viz: "Said mortgage was, on the 22d day of July, 1854, duly assigned to Henry Tower, treasurer of the Madison University, who, as such treasurer, is now the owner and holder thereof." And the notice was signed "Henry Tower, Treasurer of Madison University."

The land was purchased by Henry Tower, on the day named in the above mentioned notice, for the sum of $1050, that being the highest price bidden therefor. The affidavit of sale did not show that Tower purchased the land as treasurer, or that he bought the same on his own account. The affidavit of publication of the notice of sale was in these words and figures, viz: "State of New York, county of Madison, ss.: Thomas L. James, of Hamilton, county and

Howard *v.* Hatch.

state aforesaid, deposes and says, that he is publisher and proprietor of Madison County Journal, a weekly paper, published in Hamilton, and that the annexed notice of mortgage sale (being the one above mentioned) has been published in said paper 12 weeks successively, once in each week, commencing April 30, and ending July 16, 1856."

Henry Tower and his wife conveyed the land to the plaintiff by a quit-claim deed, bearing date the 31st day of July, 1856. There was a statement in the deed that it was intended to convey only such interest as said Tower acquired in the premises, under and through said mortgage sale. The plaintiff's title to the land was derived under said mortgage sale, and by virtue of the above mentioned quit-claim deed from Tower. The defendant was in possession of the land at the time the same was purchased by Tower, by virtue of conveyances, subject to said mortgage, made by the mortgagor subsequent to the execution of said mortgage.

The action was tried before a referee. The main questions raised on the trial were, *first*, whether the notice of the sale of the land, by virtue of the power of sale contained in the mortgage, was published twelve weeks successively, at least once in each week, within the meaning of the statute on the subject; *secondly*, whether Tower could foreclose the mortgage and sell the land, so as to pass the title thereto without being authorized to do so by the Madison University, which was shown to have been a duly incorporated literary institution, when he was the treasurer of the university; it having been shown that he was such treasurer.

No evidence was given to show that Tower purchased, held or foreclosed the mortgage as treasurer of the Madison University, except that contained in the assignment of the mortgage by Burton to him, and in the notice of the sale; and there was no direct proof made, whether or not the Madison University authorized Tower to foreclose the mortgage. The affidavits of the publication of the notice of sale, of affixing the same on the outward door of the court-house, of serving

the same on the defendant and others, and of the circumstances of the sale to Tower, were not recorded.

The defendant's counsel asked the referee to nonsuit the plaintiff on the grounds, among others, that the mortgage foreclosure was void; that the mortgage was owned by the Madison University, and the plaintiff had failed to show that such corporation ever authorized its foreclosure; that Tower had no authority to foreclose the mortgage, and could not legally foreclose it without authority for that purpose from the Madison University; that the notice of sale in the foreclosure proceedings was not published twelve weeks; that Tower had no title to the land in dispute when he executed the quit-claim deed thereof to the plaintiff; that the affidavits of the circumstances of the sale, &c., had not been recorded, and hence no title had been conveyed to the plaintiff by the quit-claim deed he took from Tower and wife. The referee refused to nonsuit the plaintiff, and the defendant, by his counsel, excepted. The referee held and decided that the plaintiff obtained title to the land in fee, under the mortgage sale, and by the deed from Tower and wife to him; and that he was entitled to recover. The defendant, by his counsel, excepted to the decision.

Judgment having been entered on the referee's report, in favor of the plaintiff, the defendant appealed therefrom to the general term of this court, where the defendant's counsel raised and discussed only the three questions examined in the following opinion of the court.

*A. N. Sheldon*, for the plaintiff.

*D. J. Mitchell*, for the defendant.

BALCOM, J. The plaintiff was not entitled to recover unless he proved and established, at the trial, that he had, at the time of commencing the action, a valid subsisting interest in the premises claimed, and a right to recover the same, or

to recover the possession thereof. (2 *R. S.* 303, § 3.) It was therefore necessary for him to show that all the requirements of the statute authorizing the sale of the premises by virtue of the power contained in the mortgage, had been complied with, to entitle him to the report made by the referee. (*Vanslyke* v. *Shelden*, 9 *Barb.* 278. *Stanton* v. *Kline*, 16 *id.* 9.) Did he do this ?

The notice of sale was first published on the 30th day of April, and lastly on the 16th day of July, 1856. The day named in it for the sale was the 24th of July in the same year. It was published twelve times, in 12 successive weeks, and only once in each week; and the time of sale was the 85th day after the first publication : so that the notice was published *during* eighty-four days, exclusive of the one on which it was first published and the day of sale ; and I think it was published for twelve weeks successively, within the meaning of the statute prescribing the time and manner of publication. (2 *R. S.* 545, § 3, *sub.* 1. *Laws of* 1842, *p.* 364, § 5.) It was published *during* the time between the 16th and 24th days of July, as much as it was during the time intervening publication days, prior to the 16th of July. The decision in *Bunce* v. *Reed*, (16 *Barb.* 347,) is not an authority against this position ; for Justice Hand, in that case, used this language : "I do not say that an affidavit of publication for twelve weeks successively, is not sufficient on a mortgage sale, if it distinctly appear that the first publication was at least eighty-four days (the day of first publication exclusive) before the sale." And I think the anonymous case in 1 *Wendell, page* 90, is not in conflict with the conclusion that a publication is sufficient, on foreclosing a mortgage by advertisement, if it be made once in each week for twelve weeks successively, although all the publications are made within seventy-eight days, as in this case, when the first is eighty-four days prior to the time specified in the notice for the sale, exclusive of the first day on which it is published.

And I am of opinion the notice of sale in this case was regularly and sufficiently published.

The affidavits of publication and affixing the notice of sale, and of the circumstances of such sale, are made evidence by statute, of the sale and of the foreclosure of the equity of redemption, "without any conveyance being executed, in the same manner and with the like effect as a conveyance executed by a mortgagee upon such sale to a third person." (2 *R. S.* 547, § 14. *Laws of* 1838, *pp.* 263, 264, § 8.) It seems, however, that there must now be affidavits of the service of the notice of sale on the mortgagor, county clerk and others, mentioned in the statutes of 1844 and 1857, (*Laws of* 1844, *p.* 529 ; *Laws of* 1857, *vol.* 1, *p.* 667,) to make the evidence of the sale and foreclosure complete. (*Layman* v. *Whiting*, 20 *Barb.* 559.) But that question is not now before the court ; for all the above mentioned affidavits were made in this case.

The only proposition to be determined, on this branch of the case, is whether it was necessary to have the affidavit recorded, to pass the title of the premises in dispute to Tower, under the mortgage sale. Section 12 of the statutes "Of the foreclosure of mortgages by advertisement," declares that "such affidavits shall be recorded at length" by the county clerk, (2 *R. S.* 547 ;) but it does not say they must be so recorded before they "shall be presumptive evidence of the facts therein contained." And there is nothing in section 14, (by which it is declared that such affidavits "shall be evidence of the sale and of the foreclosure of the equity of redemption,") or in any other statute, making it obligatory on the person making the foreclosure and sale, to have the affidavits recorded, in order to pass the title of the lands to the purchaser. I think what is said in section twelve, about the affidavits being recorded, is merely directory ; and that the purchaser does not forfeit, or even suspend, his right to the premises purchased, by omitting to have the affidavits record-

Howard *v.* Hatch.

ed ; and that the words "shall be recorded," in such section, should be read as though they were "*may* be recorded."

The only necessity for a provision in section 12, on the subject of evidence, arose because "certified copies" of the record of the affidavits were therein declared to be presumptive evidence of the facts contained in the originals. This is palpable, for the reason that the original affidavits are made evidence of the sale and foreclosure by section 14 ; and all that is said in section 12 as to the original affidavits being presumptive evidence, if considered irrespective of the fact that certified copies of such affidavits are declared to be evidence, might have been omitted by the legislature, without varying the effect of sections 12 and 14 in the least, when construed together, as they must be ; for the reason that otherwise the two sections, as they stand, would exhibit useless legislative tautology.

The conclusion seems to me to be irresistible, that the affidavits pass the title to the purchaser without being recorded ; and that Tower acquired the title to the premises in dispute, although the affidavits, which show how he obtained it, were not recorded. In coming to this conclusion, I have not been unmindful of the dictum of the learned Judge Cady, in the *Cohoes Company* v. *Goss*, (13 *Barb.* 144,) that no title passes to the purchaser until the affidavits be recorded. This remark was wholly unnecessary to the decision of the case in which it was made ; and it purports to have been induced by the opinion of Chief Justice Bronson, in *Arnot* v. *McClure*, (4 *Denio*, 41.) But with all due deference to the great learning and usual accuracy of Justice Cady, I think the opinion, in that case, instead of supporting his dictum, militates against it ; for Judge Bronson there said : "Now, by express enactment, the affidavits may have all the force and effect of a conveyance by the mortgagee to a third person. (2 *R. S.* 547, § 12. *Stat. of* 1838, *p.* 263, § 8.) This is *in addition* to the provision that the affidavits, *when recorded*, shall be

presumptive evidence of the facts therein contained; and they now perform the double office of proving the regularity of the proceedings to foreclose, and standing as a conveyance to the purchaser." (4 *Denio* 44, 45.) I therefore hesitate much less, in saying that the dictum of Justice Cady is erroneous, than I should if I supposed it was sustained by even an *obiter* remark of Justice Bronson.

The only remaining question to be determined, in this case, is whether the plaintiff should have recovered, without expressly proving that Tower was authorized by the Madison University to foreclose the mortgage, under which he claimed title to the premises in dispute. That institution was duly incorporated by a legislative act in 1846. (*Laws of* 1846, *p.* 32.) Tower was the treasurer of the corporation; and the evidence showed that he took the mortgage and held it, and foreclosed it in his official character, for the corporation. It was assigned to him as treasurer, and "to his successors in office;" and he stated, in the notice of sale of the mortgaged premises, that he, "as such treasurer," was "the owner and holder" of the mortgage. We should presume that Tower had authority from the corporation to receive all moneys due on the mortgage, and to cancel or satisfy it as treasurer. The case of *Jackson* v. *Campbell*, (5 *Wend.* 575,) shows that in the absence of all proof on the subject, we should presume that Tower, as treasurer of the Madison University, had authority to foreclose the mortgage by advertisement, and sell the premises; and having such authority, his purchase of the premises at the sale, for himself, for a less sum than was due on the mortgage, did not render the sale void, or prevent him conveying a good title to the plaintiff.

The judgment in the action should be affirmed with costs.

CAMPBELL, J., concurred.

MASON, J., dissented, on the ground that it was not shown

White *v.* Coventry.

that Tower was authorized by the Madison University to foreclose the mortgage.

Judgment affirmed with costs.

[CHENANGO GENERAL TERM, May 10, 1859. *Mason, Balcom* and *Campbell,* Justices.]