### J. R. SILVA *et al. vs.* A. J. LOPEZ *et al.*

#### APPEAL FROM DECISION OF AUSTIN, J.

#### OCTOBER TERM, 1884.

#### JUDD, C. J.; McCULLY and AUSTIN, JJ.

On a bill to set aside a sale made under a power contained in a mortgage; held that a demand for payment of interest due, accompanied by threats to foreclose, is not equivalent to an entry, and there being no entry, as required by the power, the sale was invalid.

Where the mortgage required three weeks' notice of time and place of sale, a sale on the twentieth day after first publication of notice is invalid.

A sale in town of cattle running in the country, occasioning a sacrifice on account of purchasers not seeing the property, is a violation of duty of mortgagee to sell to the best advantage.

Decree affirmed.

#### OPINION OF THE COURT, BY McCULLY, J.

A BILL in equity is brought to set aside a sale made by the chief defendant as mortgagee, under a power of sale.

The argument before us was based on four objections to the validity of the sale, as follows :

"1. That as Lopez made no entry upon or demand for the possession of the mortgaged premises and chattels, he neglected the performance of a condition precedent.

"2. That the advertisement of sale by Lopez did not comply with the terms of the power.

"3. That the manner of conducting the sale, especially as regards the live stock, was grossly unfair to the mortgagors, and a breach of the implied condition that the sale should be conducted to the highest advantage of the mortgagors.

"4. That defendant Brown, having been attorney for the mortgagee, violated his duties as trustee for the mortgagors, by becoming a purchaser at the sale of divers lots of the mortgaged property."

The power of sale is in these terms : " Then the said party of the third part (Lopez), his executors, administrators or assigns, are hereby authorized and empowered to enter into and take possession of the property and chattels hereinbefore mentioned, and sell the same at public auction, first giving three weeks' notice in the English and Hawaiian languages, in two newspapers published and printed in Honolulu, of the time and place of such sale."

Default was made in the payment of the first installment of semi-annual interest due, and the defendant proceeded to foreclose the mortgage by public sale. The property consisted of sundry parcels of real estate, and chattels described as follows : " All that flock or herd of cattle and their increase running at large in Manoa Valley, or elsewhere on the Island of Oahu, and being in number one hundred head more or less and branded P x C, three bullock carts, eight yokes and thirteen chains, also fifty head of horses, mares and colts, more or less, and their increase, running at large in said Manoa or elsewhere, and branded P x C, also five horses in said Manoa and branded Ct, and also forty head of cattle, with their increase, branded Et, and running at large in said Manoa, or elsewhere on the Island of Oahu."

Mr. Justice Austin, by whom the case was heard in chambers, whence the appeal is to this Court, sustained the bill on the second and third points of controversy above stated, not sustaining it upon the first and fourth.

The first objection to the validity of the sale is that there was no entry upon or demand for the possession of the mortgaged premises and chattels.

To effect a valid sale under power, all the directions of the power must be complied with, says Wells, J., in *Cranston vs. Crane*, 97 Mass., 463, and this is unquestioned. The counsel for the defendants cite this case as overruling *Roarty vs. Mitchell*, 7 Gray, 243. We do not think it does upon the point at issue. The power contained in the first cited case authorized entry and sale on the premises, after notice given of the time and place, and the Court held that entry at the time of sale was sufficient. In *Roarty vs. Mitchell* the language of the power was that   *   * may enter and take possession of said premises, and may sell and

dispose of the same after notice, and the Court say "that it appears upon the agreed facts that no possession was taken of nor entry made upon the premises, nor was any demand for entry or possession made. We think such entry or possession or, what perhaps would be equivalent, a demand for possession and refusal, were conditions precedent without which no valid sale could be made under the power of sale in the deed." The language of the power in the case at bar corresponds with the above in requiring entry and possession, but not that the sale be held on the premises. Both cited cases require entry, with the suggestion in the latter that demand and refusal might be equivalent.

The proceedings upon sale of mortgaged property without suit are established by Chap. XXXIII. of the Acts of 1874. The Act provides that when a power of sale is contained in a mortgage, upon breach of the condition the mortgagee may give notice of his intention to foreclose by publication for three weeks before advertising the mortgaged property for sale, "and also give such notices and do all such acts as are authorized or required by the power contained in the mortgage." He is, thirdly, to file with the Registrar of Conveyances, within thirty days after said copy of the notice of sale, an "affidavit that he has in all respects complied with the requisitions of the power of sale in relation to all things to be done by him before selling the property." The first requisition of the power of sale in this case was entry and possession. The parties having made this a condition precedent, are bound by it, without regard to any statute not requiring it; so, if it had been made a condition that the sale should be on the mortgaged premises, the statute not it requiring, this sale at any other place would not be valid. It cannot be considered that the statute requirement that three weeks' publication of intention to foreclose abrogates the condition precedent, if the parties have made it, that there shall be previous entry and possession taken. The statute provides that besides such notice of intention, the mortgagee shall also give such notices and do all such acts as are authorized or required by the power.

The evidence in this case is that the defendant mortgagee only demanded interest due, and threatened to foreclose. The threat to foreclose can only be considered a threat to take all the steps

required for legal foreclosure, among which was making entry. His demand for debt due cannot be considered an entry or taking possession. Upon this view we hold that the sale of the real estate was invalid upon the first ground of objection. How far this is applicable to the sale of the chattels will be considered in discussing the third objection.

In regard to the second objection, that the sale made on the twentieth day after the first publication of the notice was not in compliance with the condition in the mortgage of first giving three weeks' notice of the time and place of sale, we hold that not less than twenty-one days was requisite. The authorities which seem to support the defendants' position are applicable to cases where insertion of the notice is required to be a certain number of times in a weekly newspaper. They are otherwise when a publication is required for a certain period of time, as in this case, " after three weeks' notice," not after three consecutive weekly publications. For the full discussion and citation of authorities on this head we refer to the opinion of Mr. Justice Austin.

The learned Justice also sustains the bill on the third objection to the sale, as not being made in a fair and advantageous manner. This objection applies only to the sale of the chattels.

It will not be controverted that the law requires the mortgagee, in the exercise of his power, to use discretion in an intelligent and reasonable manner, not to oppress the debtor or to sacrifice his estate. Perry on Trusts, Sec. 602.

We must apply this principle to the facts and circumstances of every case.

This sale was held at an auction room in the city of Honolulu. So far as the real estate is concerned, we have no reason to believe that the sale in town was a disadvantage to the mortgagors. It is in accordance with a custom of long standing. It would be inconvenient and a disadvantage in many instances to conduct the sale of real estate on the premises, especially if there were sundry lots at some distance from town and from each other. Important sales and auction leases are made in Honolulu of estates situated in all parts of the Kingdom. And if the previous

33

notice is long enough, there are many good reasons to support this practice. Honolulu is the headquarters of capital and business. The Registry of Deeds, the Land Office and the Surveyor-General's Office are here. Surveys may be conveniently inspected and information obtained at the auction rooms or attorneys' offices during all the interval between advertisement and sale. We do not disapprove of the place of sale of the real estate in the present case.

The cattle, horses, carts, etc., remained as described in the mortgage quoted above, at the homestead, the premises being within three miles from town. They were advertised as 100 head of cattle, more or less, branded PxC, and running at Manoa, etc. It is testified by Mr. Castle: "There was no possibility of knowing what the stock was; no stock was presented. They were sold in lots of ten and perhaps (some) in lots of twenty. There was some controversy. I consider there was a sacrifice. The whole property was worth $20,000." The plaintiff Silva says: "I had thirty good milch cows; $45 is the lowest price for a good milch cow; none of the live stock was present at the sale; no measures were taken by defendant Lopez to drive them to the sale; I proposed to drive them to a pen; Lopez said, 'No.' The cows sold for $20, with their calves. No description of the horses given at the sale. Two lots were sold of ten each, bringing $100 and $110 severally."

We might cite other evidence. It is convincing that there was a heavy sacrifice. Was it necessary? We think not.

It is said for defendant that the cattle could not have been driven to the auction room. That is true. Police regulations would not permit it; but they might and should have been collected on the mortgagors' premises. Intending bidders would not have been prevented from attending by the distance. It is true, as counsel says, there might have been a greater crowd attending at the sale in the auction room, but perhaps no greater number of bidders, and they it is who make a sale. The sale of the cattle, etc., could well have been on a different day, to permit a full attendance both at the real estate sale and the chattel sale.

The property should have been on view.

Roper on Judicial Sales, Sec. 1283; and the citation from *Herod*

*vs. Bartley*, 15 Ill., 58, Chief Justice Treat saying, " In the sale of personal property on execution, the property itself must be present. Bidders should have an opportunity of inspecting the goods and forming an estimate of their value. This is the only way to secure fairness and competition at public sales. It is necessary to protect the rights of both debtor and creditor. It should also be in the power of the officer to deliver the property forthwith to the purchaser."

Freeman on Executions, Sec. 290.

The mortgagee not only sold the chattels in lots, not on view, nor yet divided into lots, but without so much of an incentive to competition as would be given by a first, second or third choice of lots of classes or sorts, *e. g.*, the first choice of ten milch cows ; although there is authority, *Waring vs. Loomis*, 4 Barb., 484, and good reason, to hold that a sale of a selection of, say thirteen, sheep out of twenty-one or twenty-two present, is void.

The rule of using every effort to sell to the best advantage will be applied with a consideration of the circumstances of the country. It might be allowed here to sell the remnant of a " brand," that is, all cattle or horses bearing the brand which could not with reasonable expense be found and captured, running semi-wild in the mountains.

In the case before us, it was reasonable to require that the chattels should be gathered on view at the mortgagee's premises, and sold with division and identification.

As such a taking possession was requisite for a proper sale, we need not consider whether, in a mortgage of chattels, it is necessary on breach to take possession, or whether the possession reverts to the mortgagee by force of law. The third objection is sustained.

Having found the sale invalid both as to the real estate and the chattels, it will not be necessary to discuss the fourth point.

As bearing upon all these points is the circumstance that the plaintiff Silva gave his consent to the sale as it was made. But in the present case it is not necessary to consider how far this cured objections and bars him from now claiming that the sale should be set aside, for he was not the sole mortgagor, and is not the sole plaintiff. The other mortgagors gave no consent. They

had an interest in the advantageous sale of Silva's estate and chattels, that they should realize enough to satisfy the debt and interest without necessity of selling the separate property of the co-mortgagors

The decree of the Court in Chambers is affirmed.

*C. W. Ashford*, for plaintiffs.

*F. M. Hatch*, for defendants.

Honolulu, December 10, 1884.

### DECISION OF AUSTIN, J., APPEALED FROM.

This is an action brought to set aside a sale under a power in a mortgage of real and personal property, upon the ground that the sale was not advertised as required by the power, or initiated as provided by the mortgage, and was improperly conducted, and sales illegally made to different purchasers; and for an injunction against a further sale of part of the property mortgaged, and for relief in accordance with the facts alleged.

I shall first consider whether the sale was properly advertised under the power. The power provides that the sale shall be at public auction, " first giving three weeks' notice in the English and Hawaiian languages in two newspapers published and printed in Honolulu, of the time and place of such sale."

The undisputed fact is that the first advertisement was made in the *Hawaiian Gazette* of June 4th, Wednesday, announcing the sale for June 24th, Tuesday, the intervening time being only twenty days. The *Gazette* is a weekly newspaper published on Wednesday morning. The proofs show publications therein on June 4th, 11th and 18th only, before the sale.

Is this giving three weeks' notice in accordance with the power ? Had the notice been of a sale upon Wednesday, June 25, 1884, this advertisement would have been sufficient in time, I think, though it would have been better to say June 26th ; but as it was I think the advertisement was defective. I have examined with care the authorities cited by counsel on both sides, and I find none which would hold this advertisement to be enough. A distinction is made between statutes or powers requiring publication for a *certain period of time* and those requiring the insertion of the notice *a certain number of times* in a newspaper.

See Wade on the Law of Notice, Sec. 1077.

I think this distinction substantially explains and renders inapplicable the cases cited by the defendant's counsel.

Had the power required a notice published once a week for three successive weeks, what was done would have complied with it.

In *Alcott vs. Robinson*, 21 N. Y., 150, cited by defendant, there was a sale of real estate on execution under a statute which required "that the time and place of holding any sale of real estate on execution should be advertised previously for six weeks successively as follows : 1st, a written or printed notice shall be fastened up in three public places in the town where such real estate shall be sold ; 2d, a copy of such notice shall be printed once in each week in a newspaper of such county if there be one."

In this case it was held sufficient to post a notice as required by the statute forty-two days previous to the sale, and publish a copy thereof in six successive numbers of a weekly newspaper, although the first publication be less than six weeks prior to the sale.

In *Priest vs. Tarlton*, 3 N. H., 93, cited by defendant, the holding is that " when a computation of time is to be made from the time of an act, the day when the act is done is to be included."

That was a case of the discharge of an insolvent debtor from imprisonment. The statute enacts that "said debtor may, at the expiration of fifteen days from the time of his commitment, apply to have said oath (for his discharge) administered to him."

Tarlton was committed on the 16th September, 1822, and in October, 1822, applied to take the oath. This was held sufficient, but the time intervening was fifteen days without counting the day the oath was applied to be taken.

In *Dexter vs. Shepard*, 117 Mass., 480, also cited by defendant the holding is that " the first publication of a notice of sale, under a mortgage power which requires the notice to be published once each week for three successive weeks, need not be made three weeks before the time appointed for the sale."

See also *Bachelor vs. Bachelor*, 1 Mass., 256, to a similar effect. In *Sheldon vs. Wright*, 7 Barb., 39, the statute required the order to be published four weeks successively in two or more newspapers, and it was held sufficient, though four weeks did not intervene between first publication and the day to show cause.

In *Swett vs. Sprague*, 55 Maine, 190, cited by defendant, a stat-

ute requiring publication three weeks successively in a certain newspaper, is complied with by three publications, though the time intervening between first publication and sale is not three weeks.

These are the strongest cases that have been found countenancing an intervening time of less than the whole period specified for notice.

These views are strongly combatted in several cases, and by three dissenting judges in *Alcott vs. Robinson*, 21 N. Y., 150, above cited ; but if correct, they fail to sustain the publication in the case at bar.

In *Early vs. Doe*, in 16 How., 317, the Supreme Court of the United States holds that a notice of a tax sale, required to be advertised once in each week for twelve successive weeks, is not given unless the first notice preceded the sale eighty-four days.

See also *Ronkendorff vs. Taylor*, 4 Peters, 349 ; *Bunce vs. Reed*, 16 Barb., 347.

In *Howard vs. Hatch*, 29 Barb., 297, it is held that twelve successive weekly publications are sufficient, though less than eighty-four days intervene between the first and last, provided the sale is advertised to be at least eighty-four days after the first publication.

The rule of computation is to include the day of the first publication and exclude the day the act is advertised to be done.

See Wade on the Law of Notice, Sec. 1070. Publication for three calendar months was held accomplished by publishing first January 10th, and last April 9th. To the end of April 9th was just three months.

Id. Sec. 1071, 32 Cal., 347.

In *Townsend vs. Tallant*, 33 Cal. 45, the order for hearing in probate was required to be published for at least four successive weeks; twenty-six days only intervened and the notice was held insufficient.

In *People vs. Gray*, 10 Abb. Pr., 408, it is held that where notice is required to be published for ten weeks, seventy days must intervene. See also 1 Wend., 90.

In the light of these authorities, nearly all of which have been cited by the respective counsel, I feel that I must decide in this

case that the sale, under the power requiring the first giving three weeks' notice, requires three weeks to intervene between the first publication and the time of sale mentioned, and that the notice of sale was therefore insufficient; and, under all the authorities mentioned, if the notice is insufficient, the sale under it is void and not merely voidable.

See also Perry on Trusts, Sec. 602 ; *Bloom vs. Burdick,* 1 Hill, 130 ; *Sherwood vs. Reade,* 7 Hill, 431 ; *Shaber vs. Robinson,* 97 U. S., 68 ; Wade on Notice, Sec. 1105 ; Rorer on Judicial Sales, Sec. 99.

*Second.* If the advertisement were to be held sufficient, very serious objections are made to the method of conducting the sale of the live stock. They consisted of a promiscuous lot of cows, oxen and horses. The cows were sold in lots of twenty, the horses in lots of ten, and four oxen and one cart were sold together. The sale was at Adams' auction-room, in Honolulu ; none of the property sold was present, but was at Manoa Valley, three miles away. No opportunity was given for inspection and the lots were not separated, but sold generally as lots of so many. Under such a method of sale they could not fail to be sacrificed, as was admitted on the stand by the attorney who conducted the sale. In fact, every sale of live stock made was shown to be a sacrifice. I do not think such a sale can stand. ·

No actual fraud is claimed, and it is the fact that the plaintiff, Silva, was present, and consented to the sale, and afterwards delivered stock under it, but manifestly he was a simple, ignorant man, and believed he was bound. Other mortgagors were not present, and are not bound by what Silva did, but I do not think he is estopped from now making the objection he makes herein.

The sale would seem to be void for uncertainty. Definite lots of particular animals were not sold, but general large lots. One lot of twenty cows, sold in form, were not found or delivered, in fact.

See *Waring vs. Loomis,* 4 Barb. 484.

In this case thirteen sheep were sold out of twenty-one or twenty-two present. On being asked which sheep he sold, the constable said " the best and fattest." All were driven away by purchaser, and selection made and the balance were driven back.

The sale was held void. The Court, Judge Marvin, says: It was the sale of a right to select out thirteen sheep from the flock; a constable has no power to make such a sale or contract. If the owner should make such a contract, no title would pass till selection was made—until then the contract would be executory. At a sale of personal property by a public officer, the property must be present, and it must be pointed out and specifically designated, so that the purchaser may know precisely what he purchases.

We think this reasoning is conclusive.

In New York State it is provided by statute that the goods and chattels sold shall be present, and pointed out to the inspection and examination of bidders.

But before any statute, and at common law, such a sale was held void.

See *Sheldon vs. Soper*, 14 Johns. 352; *Jackson vs. Striker*, 1 Johns. Cases, 284.

Freeman on Executions, Section 290.

For this reason also, as well as for the defects in the notice of the sale, I think the sale must be held void.

*Third.* The regularity of the sale was further objected to on two grounds; first, that the mortgage provides that upon failure to pay, the mortgagee is authorized and empowered to enter into and take possession of the property and chattels mortgaged, and that this was not done; and, second, that Mr. Brown, the plaintiffs' solicitor, bought several lots of the property sold, which he was unauthorized to do by law.

As to the point that no entry was made before sale, I think enough was done to authorize the advertisement for a sale. The interest due was demanded, and a threat made of sale under the power, unless payment was made.

The mortgagee continued to neglect to pay. To enter and take actual possession of the stock till immediately before the time of the sale, would have been inconvenient and expensive. The power does not in terms require, it only "authorizes and empowers," entry to be made.

Upon the point that the solicitor of the mortgagee bought some of the property sold, the authorities cited by plaintiffs' counsel seem strong, but I am inclined to doubt the wisdom of the rule.

Provided the sale be fairly conducted, I do not see that injury can arise by allowing the mortgagee or his solicitor to buy. The mortgagee is interested at least to bid up to the amount of his mortgage. At most the sale would be voidable, and if at fair prices, and some time passed before objection was made, certainly the sale should stand.

But for the reasons first and second above given, the sale must be set aside, and the conveyances made thereunder must be cancelled.

There are several purchasers upon whom this decree will operate as a hardship. They, however, have no remedy against the plaintiffs because thereof. Some of the animals bought are shown to have been resold by the purchasers. The animals still remaining must be given up to the plaintiffs, and those not forthcoming must be accounted for by the purchasers on reasonable terms, and proofs relative to the same, and the values, and also the expenses of returning the animals returned, may be taken before the clerk, and on his report an equitable decree will be made in regard thereto.

A computation may also be made by the Clerk of the amount due on the mortgage, to the end that the plaintiffs may pay the same in full.

Upon presentation, a proper decree will be signed under this decision.

Honolulu, October 9, 1884.