## H. A. WIDEMANN *v.* E. B. THOMAS.

EXCEPTIONS FROM CIRCUIT COURT. FIRST CIRCUIT.

SUBMITTED JULY 6, 1896. DECIDED JULY 22, 1896.

JUDD, C.J., FREAR AND WHITING, JJ.

(1) Failure to pay the stamp duty on articles of association of a joint stock company does not affect the validity of the incorporation of the company.

(2) When a corporation acts *de facto* and exercises corporate powers, the question whether it exercises such powers lawfully cannot be litigated between private parties.

(3) Description of mortgaged property by reference to the conveyances can be made certain by production of such conveyances.

(4) A written guaranty was made by defendant guaranteeing payment of the mortgage in question. Held, the guaranty was admissible in evidence against defendant's objection.

(5) A resolution of the corporation authorizing the negotiation of a loan to meet present exigencies and the pledging of the property of the company is admissible in evidence though the amount to be borrowed was not stated.

(6) An attempted distraint by a landlord of goods of one party for rent due from three distinct parties, not apportioning the rent, is invalid.

(7) The statute of distraint (Compiled Laws, p. 278) does not authorize the seizure of goods of a stranger on the premises.

(8) A distraint is not valid as against a lienor by mortgage by merely announcing to the tenant in possession that the goods were seized for rent, and by taking a duplicate key of the premises, leaving the goods in uninterrupted possession and use of the tenant, and not putting a keeper in charge of the goods.

(9) A sale of goods alleged to be distrained, after the expiration of fourteen days' public notice of sale, is not a compliance of the statute, which requires fifteen days' notice of such sale.

OPINION OF THE COURT BY JUDD, C.J.

This is a bill of exceptions bringing up exceptions taken by defendant to certain rulings made by Circuit Judge Perry in the trial of the case heard by him, jury waived, at the last May term, and also exceptions to the findings of fact and rulings of law made. The case is replevin by the plaintiff, mortgagee, of the printing presses, type and other machinery, being the plant of the "Holomua Publishing Company, Limited," to recover the value of the articles so mortgaged, unlawfully converted by defendant. The court found the following facts: The mortgage was made and delivered by the proper officers of the company upon authorization of its stockholders, to secure the loan of $500, on the 29th May, 1894. The loan in question was further secured by a guaranty in writing of same date as the mortgage and note. Defendant was one of the guarantors. About the 1st November, 1894, Mr. J. A. Magoon, on behalf of the landlord of the "Holomua Publishing Company, Limited," went to the office of the company and informed the parties in possession, being the officers of said company, that he distrained the goods in question for rent; thereupon one of the keys of the said premises was delivered to Mr. Magoon—the manager of the company keeping the other, and the company continued to use the goods as theretofore. This was done in pursuance of a paper dated 1st November, 1894, and signed "Holomua Publishing Co., Ltd. By A. P. Peterson, Board of Managers, Edmund Norrie, Vice-President," as follows.

"Whereas the Holomua Publishing Company is indebted to S. C. Allen in the sum of eight hundred dollars for rent of premises on King street, in block known as Thomas block, wherein its publishing business is carried on to October 31st, 1894; and,

"Whereas, said Holomua Publishing Company is unable to pay the said rent; and,

"Whereas, said S. C. Allen has taken proceedings to distrain the goods, chattels, effects and plant situate and kept in said

building, which includes the goods, chattels, effects and plant of the Elele Publishing Company; and,

"Whereas, the said Holomua Publishing Company desires to avoid the expense. of removal of said property, and desire expressly to waive the requirements of the statute in that respect, and desire to permit the sale under distraint proceedings to take place in the said premises as though said goods had been removed.

"Now, therefore, these presents witness that the said premises are hereby surrendered to said S. C. Allen by said Holomua Publishing Company, and all right and claim thereto is hereby by the said company relinquished, and the said S. C. Allen is hereby declared to be in possession thereof. Said S. C. Allen is hereby specially authorized and empowered to sell the goods, chattels, effects and plant now situate and kept in said premises as aforesaid, and the same is hereby acknowledged to have been legally distrained for rent after publishing notice of sale thereof for fourteen days from the 5th day of November, 1894, in some daily newspaper published in Honolulu, unless the sum of eight hundred dollars with rent for the month of November of fifty dollars in addition and also an attorney's fee of twenty-five dollars and all costs of advertising are previously paid.

"And it is hereby understood and agreed that the Holomua Publishing Company may continue to conduct its business in said premises until the day of sale, on condition that the said S. C. Allen shall not be responsible in any respect on account thereof, nor for any of the goods, chattels and effects and plant. And on the further condition that the officers of the said Holomua Publishing Company shall at all times take proper care of the said chattels and property and not allow the same to be damaged, destroyed or removed from the said premises, nor allow the same to be attached on mesne process or otherwise.

"Dated Nov. 1st, 1894.

"HOLOMUA PUBLISHING Co., Lmtd.

"By A. P. Peterson.

" BOARD OF MANAGERS.

"Edmund Norrie, Vice President."

The company remained in possession of the property until a public sale took place on the 29th March, 1895, under the alleged distraint. The rent due the defendant at the time of the alleged distraint was in all $1,050, part being due (1) from the proprietors of the "Elele" newspaper, part (2) by the "Holomua Publishing Co." (unincorporated), and a part (3) by the Holomua Publishing Co., Ltd. (a corporation), and the amount of rent due from each concern was never apportioned. The amount of rent then due from the Holomua Publishing Co. Ltd., then in possession, was only $250. On the 5th December, 1894, notices of sale were published, signed "S. C. Allen, by his attorney, J. Alfred Magoon," advertising the sale for 22d December. This sale was continued to the 28th December, and then to 21st January, 1895; but on the 5th January Mr. Magoon was instructed by defendant Thomas (who was S. C. Allen's principal and assignor of the lease of the premises) "to stay proceedings until further orders." On the 15th March, 1895, public notices of sale of the goods were published daily to and including March 29, when the sale took place, and probably owing to protests by plaintiff and others, the goods were by defendant bid in for only $250, and thereafter disposed of at private sale for $1,300.

The defendant during the trial in Circuit Court objected to the introduction of plaintiff's mortgage as evidence, alleging (1) that mortgagor had no corporate existence, (2) that no authorization was shown for the execution of the mortgage, and (3) that there is no property described in the mortgage and that it is therefore invalid.

(1) The Circuit Court found that the statute on incorporation of joint stock companies, Laws of 1890, Chap. 43, had been complied with—except that the fee of $25 required by Chapter 103, Laws of 1892, on articles of association, had not been paid. The Circuit Judge properly held that this circumstance did not affect the validity of the incorporation of the company. In *Hughesdale Mfg. Co. v. Vanner*, 12 R. I. 491, this exact question was decided. The question of the validity of the

legal existence of the corporation was not open to defendant. Thomson on Corporations, Sec. 502, finds the law to be that "where a corporation exists *de facto,* and in fact exercises corporate powers, the question whether it exercises such powers lawfully cannot be litigated between private parties (as in this case) or between a private party and the corporation; the question can only be litigated between the corporation and the state." Numerous cases are cited in support.

(2)   The Circuit Court had before it from the hands of the secretary the minutes of the company where the mortgage was expressly authorized, and we cannot understand why this objection was taken.

(3)   The ground of objection—as to insufficiency of the description of the property.   The mortgage in question refers to the property conveyed to plaintiffs as being that conveyed to the company by two deeds, one from C. T. Gulick, trustee, and one from F. J. Testa, trustee, both dated May 25, 1894.   These deeds were produced before the court by a clerk of the Interior Department, where they had been deposited on procuring the corporation, and it is stated on the court stenographer's notes by direction, that the deeds describe substantially the same property afterwards distrained and sold.   To this Mr. Magoon is noted as replying: "Yes, this is admitted."   See page 35 of testimony. This objection was properly overruled.

The defendant also objected to the admission of the written guaranty of defendant and others as "irrelevant and immaterial."   Reference to it clearly shows that defendant therein expressly recognized the validity of the mortgage, guaranteed its payment, and yet he then sought to attack it.   The facts showed that the object of the mortgage was to secure money to pay off pressing obligations, and that $100 of the money was paid to defendant's attorney for rent.   The Circuit Court was right in admitting the paper as evidence.

The last exception taken during the trial was that made to the introduction of the records of the corporation, which show at its first and only recorded meeting, held May 26, 1894, as

follows: "On motion of A. P. Peterson the president and treasurer be authorized to negotiate a loan and pledge the property of the corporation for such purpose of meeting present exigencies. The motion carried." The fact that no specific amount of money was authorized to be borrowed does not make the evidence inadmissible, and it was properly admitted. The legal presumption would be from the resolution and the mortgage negotiated in pursuance that either enough was borrowed to "meet present exigencies," or that as much was borrowed as plaintiff was willing to lend on such security. Certainly it did not lie in defendant's mouth to deny the authorization to borrow the money when he had reaped the benefit of it.

We now consider the other exceptions to the findings of fact and rulings of law.

We hold that the Circuit Judge was right in deciding the alleged distraint was invalid on the ground that it was asserted to be for rent due from three distinct parties, as hereinabove set forth. The Holomua Publishing Company, Ltd., was only liable at the date of the attempted distraint for rent from the date of its incorporation, May 26, 1894, to date of attempted distraint, which was about $250. A lien by distraint would only be good on the chattels owned by the company, and only for the amount of $250 it owed, and not for the rent owed, as stated, by previous possessors of the property. Our statute only authorizes seizure of the "goods and chattels of such defaulting tenant found on such premises," and not as by the common law of goods of a stranger found on the premises as well. Compiled Laws, p. 278. This would be sufficient to invalidate the distraint, for it was not pretended that the distraint was only for rent due from the company in question. See *Silva v. Homen,* 9 Haw. 14. As to non-removal of the goods "to a safe place of custody" by defendant, as required by statute, we are not at present able to say that there may not be cases where from the nature of the goods or other circumstances goods may not be kept on the premises where distrained; but in the case before us there was no keeper placed in charge of the goods, nor any-

thing done to indicate to plaintiff or any one else that they were distrained. The goods were continued uninterruptedly in use by the company, and the fact that the defendant's attorney had a duplicate key of the premises has no significance. The distraint was void for non-compliance with the provisions of the statute as to removal. The goods were not in a safe place of custody and did not affect the plaintiff's lien by mortgage.

The sale on the 29th March, 1895, was illegal. The statutory requirement of fifteen days public notice of sale was not complied with by publication from March 15th to March 29th, both days inclusive. Here was not a sale "*after* the expiration of fifteen days' public notice," as required, but only after fourteen days' notice. See *Silva v. Lopez*, 5 Haw. 262. The staying on the 5th January, 1895, of all further proceedings until further orders necessitated a fresh publication of notice of sale, if, indeed, it was not altogether an abandonment of the alleged distraint and required a new distraint. The plaintiff's mortgage was due because the covenant as to insurance had not been complied with. The sale of the mortgaged goods by defendant (especially after claim by plaintiff made on the 28th December, 1894, to the defendant, his agent and the company and demand for possesssion, and, in view of the fact that defendant's attempted distraint was invalid) renders him liable for the market value of the goods at the time, which the Circuit Court properly found to be the amount they realized when defendant finally sold them.

The exceptions are overruled.

*Kinney & Ballou*, for plaintiff.

*Magoon & Edings*, for defendant.