**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

APR 24 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| DAVID EMORY BALD, individually and on behalf of all others similarly situated; EMILY LELIS, individually and on behalf of all others similarly situated,<br><br>              Plaintiffs-Appellants,<br><br>  v.<br><br>WELLS FARGO BANK, N.A., a national banking association; DOE DEFENDANTS 1-50,<br><br>              Defendants-Appellees. | No.   13-16622<br><br>D.C. No.<br>1:13-cv-00135-SOM-KSC<br><br><br>MEMORANDUM [*] |

Appeal from the United States District Court
for the District of Hawaii
Susan Oki Mollway, District Judge, Presiding

Argued and Submitted October 13, 2015
Honolulu, Hawaii

Before:  O'SCANNLAIN, TALLMAN, and M. SMITH, Circuit Judges.

In this putative class action, David Emory Bald and Emily Lelis

(collectively, Plaintiffs) contend that defendant Wells Fargo Bank, N.A. (Wells

Fargo) violated Hawaii Revised Statutes (HRS) § 480-2 in connection with the

---

        [*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

nonjudicial foreclosure sales of Plaintiffs' homes. HRS § 480-2(a) prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce," including acts that violate common law duties. *Kapunakea Partners v. Equilon Enters. LLC*, 679 F. Supp. 2d 1203, 1209–10 (D. Haw. 2009) (quoting HRS § 480-2(a)). Plaintiffs allege that Wells Fargo violated its common law duty to exercise its power of sale in a manner that does not unreasonably damage the debtor by (1) advertising in its notice of sale that only a quitclaim deed would be provided to the winning bidder, despite the fact that it sometimes provided a limited warranty deed; and (2) not publishing notices of postponement of foreclosure auctions.

The district court granted Wells Fargo's motion to dismiss, holding that the Hawaii foreclosure statute did not prescribe the form of deed to be offered and allowed postponement via oral announcement, and that the Hawaii common law duty of a mortgagee to not unnecessarily injure the debtor did not apply.

**I.** Wells Fargo argues that Plaintiffs lack standing because they are not "consumers" as to Wells Fargo pursuant to HRS § 480-2. Consumer is defined as "a natural person who, primarily for personal, family, or household purposes, purchases, attempts to purchase, or is solicited to purchase goods or services or who commits money, property, or services in a personal investment." HRS § 480-1. "In the context of consumer debt, the determination of whether the individual

2

seeking suit is a 'consumer' should rest on whether the underlying transaction which gave rise to the obligation met the requirements of HRS § 480-1." *Hungate v. Law Office of David B. Rosen*, 391 P.3d 1, 17 (Haw. 2017) (internal quotation marks and alteration omitted). As in *Hungate*, the underlying transactions in this case "involved committing money in a personal investment pursuant to HRS § 480-1, namely, purchasing residential property," and "an individual who purchases residential property through acquiring a loan . . . is a 'consumer' committing money in a personal investment within the meaning of HRS § 480-1." *Id.* Thus, Plaintiffs have standing as consumers.

**II.** Plaintiffs argue that the district court erred by dismissing its claims that, pursuant to HRS § 480-2, Wells Fargo's practices in conducting nonjudicial foreclosures were unfair or deceptive. "[W]hether a practice constitutes an unfair or deceptive trade practice is ordinarily a question of fact." *Hungate*, 391 P.3d at 17. "To determine sufficiency, we accept the allegations made in [Plaintiffs'] complaints as true and view them in the light most favorable to [Plaintiffs]." *Id.* (internal quotation marks omitted).

To violate HRS § 480-2, a practice need only be unfair or deceptive, not both. *See State by Bronster v. U.S. Steel Corp.*, 919 P.2d 294, 313 (Haw. 1996).[1] "A practice is unfair when it [1] offends established public policy and [2] when the practice is immoral, unethical, oppressive, unscrupulous or [3] substantially injurious to consumers." *Hungate*, 391 P.3d at 18 (internal quotation marks omitted). Plaintiffs "need not allege that [Wells Fargo's] actions meet all three of these factors to assert an unfair act or practice." *Id.* Rather, "[a] practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.* (quoting *Kapunakea Partners*, 679 F. Supp. 2d at 1210). "A practice may be unfair if it 'offends public policy as established by statutes, the common law, or otherwise.'" *Id.* (quoting *Kapunakea Partners*, 679 F. Supp. 2d at 1210).

Plaintiffs sufficiently alleged that Wells Fargo's practices were unfair because they offend public policy as established by the common law. In *Hungate*, *id.* at 15, the Hawaii Supreme Court clarified that the common law duties established in *Silva v. Lopez*, 5 Haw. 262 (1884), and *Ulrich v. Security Investment Co.*, 35 Haw. 158 (1939), apply to a mortgagee in conducting nonjudicial foreclosures. A mortgagee must exercise its "discretion in an intelligent and

---

[1] Because Plaintiffs sufficiently alleged that Wells Fargo's practices were unfair, we decline to address whether Plaintiffs sufficiently alleged that Wells Fargo's practices were deceptive.

4

reasonable manner, not to oppress the debtor or to sacrifice his estate." *Silva*, 5 Haw. at 265. In conducting a foreclosure sale a mortgagee must "exercise reasonable diligence to secure the best possible prices," *Ulrich*, 35 Haw. at 172, and this duty applies to both real property and chattel mortgages. *Hungate*, 391 P.3d at 15. Although the law does not impose a duty to obtain fair market value in a foreclosure sale, "the mortgagee nonetheless has a duty to use fair and reasonable means to conduct the foreclosure sale in a manner that is conducive to obtaining the best price under the circumstances." *Id.* at 16. Additionally, when the mortgagee purchases the property in a nonjudicial foreclosure sale, the mortgagee "has the burden to establish that the sale was fairly conducted and resulted in an adequate price under the circumstances." *Id.*

A jury could find that Wells Fargo's practice of advertising only quitclaim deeds violated its common law duty to "exercise reasonable diligence to secure the best possible prices," and thus was unfair. *Ulrich*, 35 Haw. at 172. Because the fairness of a practice is a question of fact, the district court erred by treating the question as one necessarily to be resolved as a categorical question of law. Noting that HRS § 667-5 did not specify what form of deed should be advertised, the district court was "particularly concerned that it could create a host of problems if it were to rule, without further detail, that a quitclaim deed or an advertisement promising only a quitclaim deed violated a court-created duty." However, the

district court's ruling need not be categorical, and we view the allegations in the light most favorable to Plaintiffs. *Hungate*, 391 P.3d at 17–18. The facts alleged show that Wells Fargo only advertised quitclaim deeds in its foreclosure sale notices, but provided a limited warranty deed in many instances. Advertising a warranty deed would enhance the value of the property being sold, and the complaint adequately alleged that Wells Fargo's failure to do so for the foreclosures at issue was an unfair practice. Whether that is so, or whether, instead, the practice was reasonable, is a question of fact to be addressed on remand.

A jury could also find that Wells Fargo's practice of postponing foreclosure sales without publishing notice was unfair. Plaintiffs allege that Wells Fargo's postponement of the Lelis auction by announcement constituted a breach of a term in the Lelis mortgage providing that "Lender shall publish a notice of sale and shall sell the property at the time and place and under the terms specified in the notice of sale." The Hawaii Supreme Court recently considered a mortgage with an identical term in its power of sale clause and held that, although HRS § 667-5 allowed for postponement by public announcement, if the power of sale clause requires more than does the statute, the mortgagee must follow the power of sale clause. *Hungate*, 391 P.3d at 11. The Court held that because the power of sale clause can be reasonably interpreted as requiring that a postponement must be

6

published in order for the postponed sale to be made "at the time and place and under the terms specified in the notice of sale," and because ambiguities in a contract are construed against the drafter, the mortgagee was required to publish a new notice of sale to postpone a sale. *Id.* Thus, given that the Lelis mortgage contained the identical mortgage provision, Plaintiffs sufficiently alleged that Wells Fargo's practice of postponement by public announcement was unfair because it violated the terms of the parties' contract.

Additionally, a jury could find that postponement by public announcement violated Wells Fargo's common law "duty to use fair and reasonable means to conduct the foreclosure sale in a manner that is conducive to obtaining the best price under the circumstances." *Id.* at 16. Postponement may negatively impact the sale price when interested bidders would have attended on the noticed sale date but cannot or do not attend the postponed sale. *See, e.g.*, *Albice v. Premier Mortg. Servs. of Wash., Inc.*, 276 P.3d 1277, 1285 (Wash. 2012) (holding that numerous continuances postponing a sale led to a lower price). Thus, Plaintiffs sufficiently alleged that Wells Fargo's practices of advertising only quitclaim deeds and postponing by public announcement were unfair.

**III.** In addition to sufficiently alleging that a defendant's conduct was unfair or deceptive within the meaning of HRS § 480-2, a plaintiff must "allege sufficient

7

facts to show he was injured." *Hungate*, 391 P.3d at 19. The statute "does not define injury or damages, but Hawaiʻi courts have not set a high bar for proving injury." *Id.* (internal quotation marks omitted).

Wells Fargo argues that the pleading was not specific enough because the heightened fraud pleading standard applies. Wells Fargo relies on *Baker v. Castle & Cooke Homes Hawaii, Inc.*, No. 11-00616 SOM-RLP, 2012 WL 1454967, at *17 (D. Haw. Apr. 25, 2012), which held that "[b]ecause section 480–2 is based on fraudulent acts, claims brought under that chapter are subject to the heightened pleading requirements under Rule 9(b) of the Federal Rules of Civil Procedure." However, *Baker* concerned a fraudulent practice rather than an unfair one, and did not note that the two prongs are treated separately under Hawaii law. *Id.*; *see State by Bronster*, 919 P.2d at 313. No heightened pleading standard applies in this case, where the allegations are sufficient under the "unfair" prong. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104–05 (9th Cir. 2003).

To state an HRS § 480-2 claim that is not based on a fraudulent practice, a plaintiff "need only allege that he has, as a direct and proximate result of [the defendant's] violation of section 480-2, sustained special and general damages [sufficient] to withstand a motion to dismiss." *Hungate*, 391 P.3d at 19 (internal quotation marks and alterations omitted).

For the foregoing reasons, we **REVERSE** the district court's order granting

8

Wells Fargo's motion to dismiss and **REMAND** for proceedings consistent with this memorandum.